[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 17 
This appeal is the result of a civil action in the Circuit Court of Montgomery County seeking recovery under the uninsured motorist provisions of an insurance policy issued by appellee, Alabama Farm Bureau Mutual Insurance Company, Inc.
The action was initiated by the appellant, Charles Davis, who was acting as the administrator of the estate of Eugene Jackson Davis. The case was heard without a jury and after the presentation of evidence by both parties the trial court found that Eugene Jackson "Jack" Davis was killed in a motor vehicle collision involving three cars. Although there was liability insurance on the vehicle which Davis was driving, neither of the drivers of the other two cars had automobile liability insurance at the time of the collision. Consequently, both of these drivers were uninsured motorists as defined in the insurance policy issued by Farm Bureau. The trial court determined that the proximate cause of Davis' death was the negligence of one of the uninsured drivers. The court also held that the insurance policy purchased for the automobile in which Davis was killed by the car's owner, David Garrett, was in force on the date of the fatal collision and that Davis was driving the vehicle with the permission of Garrett. Accordingly, the court ruled that Davis was insured under the uninsured motorist provisions of the Farm Bureau policy and rendered a judgment in favor of Davis' estate in the amount of $10,000. From that judgment Farm Bureau appeals.
The primary question before us is whether Garrett (the named insured) possessed an insurable interest in the automobile at the time of Davis' accident sufficient to support recovery by the latter's estate under the uninsured motorist provisions of the policy. Farm Bureau contends that the policy was void because Garrett had no insurable interest in the insured automobile and that as a consequence of this fact, the trial court erred in holding that the estate of Jack Davis could recover under the policy's uninsured motorist provisions. Conversely, the administrator of Davis' estate claims that Garrett held the title to the vehicle in question and as such had an insurable interest in it. We conclude that Garrett had an insurable interest in the vehicle in question and that the trial court was correct in permitting the estate of Davis to recover under the policy's uninsured motorist coverage.
The evidence adduced at trial indicates that Garrett and his brother-in-law, Jack Davis, agreed to purchase an automobile. The two men traveled to Birmingham and purchased a Ford Mustang. Although Davis provided the money for the down payment on the car, it was Garrett who entered into a security agreement with the Ford dealer for the additional financing of the automobile's purchase price. At the time of the sale Garrett also received a federal excise tax refund on the car. The bill of sale and license tag registration were issued in the name of Garrett. Davis, however, took possession of the car and made the monthly payments on it.
Due to the financing arrangements entered into with the Ford dealer, the new automobile was insured with an insurance company other than Farm Bureau. However, the original insurance on the car expired approximately a year after the purchase of the vehicle.
At the time the original policy on the automobile expired, Garrett carried liability insurance coverage with Farm Bureau on another car which he owned. In order to take advantage of the special "two-car discount" on insurance premiums which Farm Bureau offered to automobile owners who had two cars insured with Farm Bureau, Garrett telephoned his insurance agent and had the Ford Mustang which Davis and he had purchased insured. Garrett paid all the premiums on the policy and kept the policy in his possession at all times. *Page 18 
Our legislature has provided that all automobile liability policies contain uninsured motorist protection unless such protection is rejected by the insured. Title 32, chapter 7, section 23, Code of Alabama 1975 [formerly Title 36, section 74 (62a)]. In this regard, uninsured motorist protection is an integral part of automobile liability insurance. Consequently, uninsured motorist coverage, like liability coverage, must be supported by an insurable interest in the insured. And the test of an insurable interest in an automobile liability policy, as well as the uninsured motorist provisions contained in that policy, is whether the named insured would be liable to others for injury to persons or property arising out of the operation of the insured automobile. Employers National Insurance Co. v.Holliman, 287 Ala. 123, 248 So.2d 717 (1971); Bendall v. HomeIndemnity Co., 286 Ala. 146, 238 So.2d 177 (1970).
In support of its contention that Garrett did not have an insurable interest in the vehicle in question, Farm Bureau relies on the above cited cases of Bendall and Holliman as being factually similar to the case at bar.
A comparison of the cited cases and the case at bar reveals the following facts:
 Bendall and Holliman Davis ------- -------- -----
(1) The named insured (1) The named insured used the car occasion- used the car occasionally ally but never claimed but at all times asserted any ownership interest; his ownership interest by (a) retaining a set of keys to the car; (b) requiring the principal operator to re-register the automobile in the name of the insured; (c) by removing the tape player and other items from the vehicle after it was involved in the automobile accident; and (d) by holding legal title to the vehicle;
(2) the named insured al- (2) the named insured did ways asked permission of not ask permission of the the principal operator to principal operator to use use the car; the car although insured did generally inquire as to whether the principal operator of the automobile planned to use it;
(3) the named insured (3) the named insured never limited the princi- generally did not limit the pal operator's use of the principal operator's use car; of the car, but on one occasion he did contramand the right of a third party to use the car even though the insured knew that this right had been conferred on the third party by the express permission of the operator;
(4) the car was garaged (4) the car was garaged at the home of the princi- at the home of the insured pal operator; during a period when the principal operator resided in the home of the insured;
(5) the insurance premi- (5) the insurance premiums ums were paid by the were paid by the insured; principal operator;
(6) the insurance policy (6) the insurance policy was kept by the principal was kept by the insured operator;
(7) the license tag regis- (7) the license tag tration was in the name registration was in the of the principal operator name of the insured and he or a third party. prevented any change in the registration to another person's name.
 * insured = David Garrett * principal operator = Jack Davis
We suggest that a careful examination of the facts in the cited cases and the case at bar as set out above will readily reveal their dissimilarities and, as a consequence, the cited cases cannot be relied on as factually supportive of the conclusion that Garrett had no insurable interest in the vehicle in question.
To recapitulate the facts in the present case, Garrett was the sole obligor on the security agreement and note of indebtedness for the purchase price of the automobile and therefore had a financial interest in protecting himself against liability arising out of the use of the car. Garrett was also obligated to pay the insurance premiums on the vehicle and had he failed *Page 19 
to do so he would have lost his protection against liability as well as his "two-car discount" on the rate of his insurance premiums. Finally, Garrett held legal title to the automobile and as the owner of the vehicle was potentially liable for its use. These facts indicate an insurable interest and the necessity for purchasing insurance on the automobile. Consequently, we are not disposed to hold that the trial court erred in ruling that Garrett possessed an insurable interest in the car driven by Davis.[1]
Moreover, in cases of this nature there is a presumption in favor of findings of fact made by the trial court since it hears the disputed evidence ore tenus. This presumption precludes our reversal of the trial court's judgment unless it is determined to be plainly and palpably wrong. And although this presumption is not applicable in situations where the trial judge takes an erroneous view of the law as applied to the facts, we are unable to say in this instance that the trial court misapplied the law to the facts in finding an insurable interest on the part of Garrett. Thus the presumption of the correctness of the trial court's decree is applicable and we affirm that court's conclusion on this matter.
The second issue presented by Farm Bureau's appeal is the contention that the trial court erred in finding that Garrett did not misrepresent or conceal facts which were material to the issuance of the policy. Specifically, Farm Bureau claims that Garrett misrepresented two facts to the Farm Bureau agent with whom Garrett dealt.
The first misrepresentation concerns Garrett's alleged statement to the agent that he (Garrett) was the principal operator of the vehicle in question. And the second misrepresentation involved whether Garrett told the agent that the automobile was garaged at his (Garrett's) home when in fact it was garaged at the home of Davis' parents where Jack Davis lived during most of the period subsequent to the purchase of the car.
While we recognize that a representation by the insured that he is the principal operator or sole owner of an insured motor vehicle may be material to the risk and that an insurance company might refuse to issue the policy if a misstatement about such matters were within its knowledge, on the record before us the question of the alleged misrepresentations is not entirely free from doubt. Indeed, the evidence on these matters was in sharp conflict. Garrett admitted upon cross-examination that after the accident he had told an insurance claims adjuster that he (Garrett) was the primary user of the automobile and that the car was principally garaged at his residence. However, additional evidence was to the effect that after he had made these claims, Garrett retracted his earlier statement, informed the adjuster it had been incorrect and provided the adjuster with the correct information.
Farm Bureau also argues that when Garrett purchased insurance on the automobile driven by Davis, Garrett knew the terms of that policy since he already held an identical policy with Farm Bureau on another car. Accordingly, Farm Bureau urges that Garrett's failure to disclose that he would not be the principal operator of the vehicle constituted a concealment of information which Garrett knew was essential to the underwriting of the policy and thereby the policy is void on the basis of an omission of a material fact. However, when Garrett was questioned about this matter at trial he testified that the insurance agent requested no information with respect to who would operate the vehicle or where it would be garaged. Garrett went on to say that the *Page 20 
agent asked him only the "make, model and serial number" of the automobile and what type insurance Garrett wanted on it. There was no evidence that Garrett knew that his statements or his failure to provide additional information violated the provisions of the policy dealing with the operation or garaging of the vehicle.
As the above described evidence indicates, there was sufficient testimony (although in conflict) to support the trial court's determination that Garrett did not misrepresent or defraud Farm Bureau in obtaining the insurance. Moreover, the court specifically found that the Farm Bureau agent issued the policy to Garrett without requiring the application form to be completed or signed by the latter and that any dispute as to the information given the agent was the result of the manner in which the agent wrote the policy rather than any fault on the part of Garrett.
This court has held that misstatements or errors in insurance applications which occur due to the neglect or fault of the insurance company's agent are not a valid basis for denying coverage on the policy issued. United Security Life Insurancev. St. Clair, 41 Ala. App. 243, 130 So.2d 213 (1961). Likewise the failure of the agent to ask the questions necessary to correctly fill out inquiries in an insurance policy will not prevent the insurance company from being liable on the policy.United Security Life Insurance v. St. Clair, supra. This rule is applicable even in situations where the agent writes answers to the questions in the insurance policy as though he had asked such questions of the insured, and the latter had answered them, and the insurance company in issuing the policy acts on the policy as written without any knowledge of the agent's actions. United Security Life Insurance v. St. Clair, supra.
The trial court applied the above stated principles of law in considering this matter and it was not in error for so doing. Furthermore, as the trier of fact in this case the trial court examined conflicting evidence and found that both the legal and factual aspects of the case warranted its finding that Garrett did not mislead Farm Bureau. Such a finding was supported by the evidence and pertinent rules of law, therefore we cannot say that the court's decision in regard to Farm Bureau's allegations of concealment and fraud was plainly erroneous or manifestly unjust.
The final issue presented by Farm Bureau is based on its claim that the trial judge erroneously failed to hold that Farm Bureau had proper grounds for rescinding its insurance policy with Garrett. The basis for this contention is Farm Bureau's assertion that the declarations contained in the policy were violated and that Garrett had the policy in his possession, knew that its terms had been violated and, despite this knowledge, deliberately concealed the circumstances which actually existed from Farm Bureau. The specific provisions which the insurance company claims were violated are: (1) the insured automobile will be garaged at the address of the named insured; and (2) the named insured is the owner of the automobile and has complete control over its use.
We find little merit to either of these contentions. It has been stated that the insurer's liability of risk must stem from the use to which a car is put — rather than where it is garaged — before the insurer can rely on an incorrect declaration as to where the automobile will be garaged in attempting to void the policy. See Commercial Union InsuranceCo. of New York v. Security General Insurance Co., 282 Ala. 344, 211 So.2d 477 (1968). Moreover, a representation or declaration that an automobile will be garaged at a particular place is merely a statement of expectation, Commercial UnionInsurance Co. of New York v. Security General Insurance Co.,supra, and as such is not material to the acceptance of the risk. Consequently an incorrect declaration concerning the location where a vehicle is to be garaged shall not prevent recovery under the insurance policy unless it is demonstrated that the declaration was fraudulently made. Title 27, chapter 14, section 7, Code of Alabama 1975 (formerly Title 28A, section 320). Since the court *Page 21 
found no fraud on the part of Garrett in regard to this matter, Farm Bureau may not void the policy in question on the basis that the declaration dealing with the place where the automobile was to be garaged was violated.
Nor may Farm Bureau deny the applicability of the insurance policy issued to Garrett on the grounds that he did not have complete control over the vehicle's use. It is axiomatic that terms and declarations of an insurance policy which are relied upon by the insurer to escape its obligation to the insured are strictly construed against the insurer. Commercial UnionInsurance Co. of New York v. Security General Insurance Co.,supra. We believe the term "complete control" as used in the policy which was issued to Garrett refers to the power of the vehicle's legal owner (Garrett) (and other persons whom he permitted or designated) to manage, supervise, direct or oversee the actual use of the automobile. The adjective "complete" added nothing more to this definition of control other than to require that the control exercised by Garrett over the insured item include every aspect of the vehicle's utilization. However, this power did not have to be constantly wielded by Garrett; it was enough that he had the capacity to exercise complete control when and if he felt the need for it arose or that he designated another person to exercise such control.
Furthermore, a determination of whether Garrett's actual or impending authority to direct the use or nonuse of the car was sufficient to meet the requirement of "complete control" was a factual matter for consideration by the trier of fact. And, as previously indicated, the trier of fact will not be reversed in instances where evidence is presented at trial which would support the conclusions reached by the trier of fact in regard to a matter before it.
In the present case the trial court found that Garrett exercised "complete control" over the vehicle in question. This finding was premised on the court's determination: (1) that Garrett had held title to the car since its purchase; (2) that Garrett at all times had required that the automobile be registered in his own name; (3) that Garrett was the only person liable on the contract of purchase for the automobile and would lose title to it if payments on it were not made; (4) that upon purchase of the automobile Garrett received from the automobile dealer an excise tax rebate which Garrett spent for his own use; (5) that Garrett had full and complete use of the vehicle when he desired it and that he could exercise this use without obtaining permission from another party; (6) that Garrett obtained insurance for the car and paid the premiums thereon; (7) that at all times Garrett kept a set of keys to the car in his possession; and (8) that Garrett refused to allow the sister of the deceased to use the vehicle.
We have examined the record before us carefully and cannot say that the above stated findings by the trial court were unsupported by the evidence presented at trial. Accordingly, we are not persuaded that the trial judge's determination that David Garrett exercised complete control over the insured automobile was incorrect.
No reversible error having been successfully argued, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] In the case of Indiana Lumbermen's Mutual Insurance Co. v.Janes, 230 F.2d 500 (5th Cir. 1956), the Federal Court of Appeals for the Fifth Circuit held that an insurable interest existed on behalf of the insured in an automobile purchased for the use of the insured's minor brother. The court based this conclusion on the fact that the insured remained personally liable on the financing notes and sales contract for the automobile; that he had a personal obligation to pay the insurance premiums, and that he retained title and legal ownership of the vehicle. See also Osborne v. SecurityInsurance Co., 155 Cal.App.2d 201, 318 P.2d 94 (1957); TruckInsurance Exchange v. Hanson, 42 Wn.2d 256, 254 P.2d 494
(1953).