[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 525 
This appeal involves the right of a property owner, in an action for trespass, to recover damages for pollution of his property. The case was tried ore tenus to the trial Judge without a jury, and judgment was rendered for the Defendant. We reverse and remand for a new trial.
J.H. Borland, Sr., and Sarah M. Borland, Appellants, own approximately 159 acres of land, located just south of Troy, Alabama, on Henderson Road. On this property, Appellants raise cattle, grow several different crops, and have a large pecan orchard.
In 1968, the Appellee, Sanders Lead Company, started an operation for the recovery of lead from used automobile batteries. This operation is conducted on property just east of the Borlands' property across Henderson Road. The Appellee's smelter was placed on the west edge of their property, that part nearest to the Appellants' property. The smelter is used to reduce the plates from used automobile batteries. It is alleged by Appellants that the smelting process results in the emission of lead particulates and sulfoxide gases.
It is undisputed that Appellee installed a filter system, commonly known as a "bag house," to intercept these lead particulates which otherwise would be emitted into the atmosphere. The "bag house" is a building containing fiber bags. The smoke emitting from the furnace is passed through two cooling systems before passing through the "bag house" so that the fiber bags will not *Page 526 
catch fire. If properly installed and used, an efficient "bag house" will recover over 99% of the lead emitted. On two occasions, the cooling system at Appellee's smeltering plant has failed to function properly, resulting in the "bag house's" catching fire on both occasions. There is a dispute as to the efficiency of Appellee's "bag house" throughout its operation.
Appellants allege that, because of the problems with the "bag house," their property has been damaged by a dangerous accumulation of lead particulates and sulfoxide deposits on their property.
Admittedly, this is an ore tenus case and the law is well settled that, in such cases, this Court is precluded from altering a lower court's findings unless those findings are clearly erroneous. Donnelly v. Doak, 346 So.2d 414 (Ala. 1977). It is equally true, however, that this rule has never precluded this Court from reversing a case where the trial court erroneously applies the principles of law involved. Babcock v.Smith, 285 Ala. 557, 234 So.2d 573 (1970); St. ClairIndustries, Inc. v. Harmon's Pipe Fitting Co., 282 Ala. 466,213 So.2d 201 (1968).
As stated by the Court of Civil Appeals in the very recent case of Alabama Farm Bureau Mutual Ins. Co., Inc. v. Davis,354 So.2d 15 (Ala.Civ.App. 1978):
 "[I]n cases of this nature there is a presumption in favor of findings of fact made by the trial court since it hears the disputed evidence ore tenus. This presumption precludes our reversal of the trial court's judgment unless it is determined to be plainly and palpably wrong. . . . [T]his presumption is not applicable in situations where the trial judge takes an erroneous view of the law as applied to the facts. . . ." (Emphasis added.)
It is our opinion that the trial Judge has misapplied the law in this case.
In the trial Court's final decree, it is stated:
 "Any court is bound by the applicable laws in any case. In any society operating under manmade law
there is inherent the possibility that the law will provide no appropriate remedy for grievances no matter how strongly the equitable conscience of the court and/or a community may feel the need for action." (Emphasis in the original.)
Furthermore, the trial Court held:
 "It is the opinion of the court that the plaintiffs not recover of the defendant. The court would comment that there is ample evidence (even from the testimony of plaintiff, J.H. Borland) that his land is significantly increased in value due to its proximity to the lead plant and has a much higher value as commercial property rather than residential or farm property. . . ."
It is apparent from a further reading of the final decree that the trial Court was under the mistaken impression that compliance with the Alabama Air Pollution Control Act shielded the Defendant from liability for damages caused by pollutants emitting from its smelter. This is not the law in this State. Furthermore, the trial Court incorrectly applied the law of this State in concluding that, because there was evidence showing that the Plaintiffs' farm had increased in value as industrial property, due to its proximity to the lead plant, Plaintiffs could not recover of the Defendant. Such a rule, in effect, would permit private condemnation, which, unquestionably, is impermissible. A discussion of the applicable rule of damages appears later in this opinion.
The Alabama Air Pollution Control Act is codified at §22-28-1, et seq., Alabama Code 1975. § 22-28-23, Alabama Code 1975, specifically provides:
 [N]othing in this section shall be construed to limit or abrogate any private remedies now available to any person for the alleviation, abatement, control, correction or prevention of air pollution or restitution for damage resulting therefrom. (Emphasis added.)
Alabama law clearly provides an appropriate remedy for Plaintiffs who have been directly injured by the deleterious effects of pollutants created by another party's acts. *Page 527 
In Rushing v. Hooper-McDonald, Inc., 293 Ala. 56,300 So.2d 94 (1974), this Court held, in a case of first impression, that a trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty. Rushing
specifically held that a trespass is committed by one who knowingly discharges asphalt in such a manner that it will in due course invade a neighbor's realty and cause harm.
In Rushing, this Court cited with approval Restatement, Second, Torts, § 158, and particularly emphasized a portion of the Comments under this section, which recites:
 "`In order that there may be a trespass under the rule stated in this Section, it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in entry of foreign matters.'"
Rushing further cited with approval the case of Martin v.Reynolds Metals Co., 221 Or. 86, 342 P.2d 790, cert. denied,362 U.S. 918, 80 S.Ct. 672, 4 L.Ed.2d 739 (1959). In Martin, a case remarkably similar to the present case, the Plaintiffs sought recovery from the Defendant, aluminum company, for trespass. The Plaintiffs in Martin alleged that the operation by Defendants of an aluminum reduction plant caused certain fluoride compounds in the form of gases and particulates, invisible to the naked eye, to become airborne and settle on Plaintiffs' property, rendering it unfit for raising livestock. Plaintiffs in the present case allege that the operation of Defendant's lead reduction plant causes an emission of lead particulates, and SO2, invisible to the naked eye, which emissions have settled on their property, making it unsuitable for raising cattle or growing crops.
The Defendants in Martin contended that there had not been a sufficient invasion of Plaintiffs' property to constitute trespass, but, at most, Defendant's acts constituted a nuisance. This would have allowed the Defendants to set up Oregon's two-year statute of limitations applicable to non-possessory injuries to land rather than Oregon's six-year statute for trespass to land.
The Martin Court pointed out that trespass and nuisance are separate torts for the protection of different interests invaded — trespass protecting the possessor's interest in exclusive possession of property and nuisance protecting the interest in use and enjoyment. The Court noted, and we agree, that the same conduct on the part of a defendant may, and often does, result in the actionable invasion of both interests.
The confusion surrounding trespass and nuisance is due in a large part to the influence of common law forms of action. The modern action for trespass to land stemmed inexorably from the common law action for trespass which lay when the injury was both direct and substantial. Nuisance, on the other hand, would lie when injuries were indirect and less substantial. See Winfield, Nuisance as a Tort, 4 Camb. L.J., 189, 201-06 (1931). A fictitious "dimensional" test arose, which obviated the necessity of determining whether the intrusion was "direct" and "substantial." If the intruding agent could be seen by the naked eye, the intrusion was considered a trespass. If the agent could not be seen, it was considered indirect and less substantial, hence, a nuisance. See, e.g., 1 Harper James, Torts, § 1.23 (1946) (where the dimensional or the tangible/intangible test is included in an earlier definition of trespass and nuisance).
In Martin v. Reynolds, supra, the Court stated:
 ". . . The defendant asks us to take account of the difference in size of the physical agency through which the intrusion occurs and relegate entirely to the field of nuisance law certain invasions which do not meet the dimensional test, whatever that is."
The Martin Court rejected the dimensional test and substituted in its place a force and energy test, stating:
 "The view recognizing a trespassory invasion where there is no `thing' which can *Page 528 
be seen with the naked eye undoubtedly runs counter to the definition of trespass expressed in some quarters. 1 Restatement, Torts § 158, Comment H (1934); Prosser, Torts § 13 (2d Ed. 1955). It is quite possible that in an earlier day when science had not yet peered into the molecular and atomic world of small particles, the courts could not fit an invasion through unseen physical instrumentalities into the requirement that a trespass can result only from a direct invasion. But in this atomic age even the uneducated know the great and awful force contained in the atom and what it can do to a man's property if it is released. In fact, the now famous equation E=mc[2] has taught us that mass and energy are equivalents and that our concept of `things' must be reframed. If these observations on science in relation to the law of trespass should appear theoretical and unreal in the abstract, they become very practical and real to the possessor of land when the unseen force cracks the foundation of his house. The force is just as real if it is chemical in nature and must be awakened by the intervention of another agency before it does harm.
 "If, then, we must look to the character of the instrumentality which is used in making an intrusion upon another's land we prefer to emphasize the object's energy or force rather than its size. Viewed in this way we may define trespass as an intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist.
 "We are of the opinion, therefore, that the intrusion of the fluoride particulates in the present case constituted a trespass."
In deciding what acts constitute a trespass, the Oregon Supreme Court cited earlier cases recognizing that a trespass is committed by a defendant's blasting operation when the vibrations and concussions to earth and air cause damage to the plaintiff's property. Admittedly, as the Appellee contends, Alabama case law rejects the theory that mere concussion caused by blasting operations constitutes a trespass. Coalite, Inc. v.Aldridge, 285 Ala. 137, 229 So.2d 539 (1969). Coalite requires proof of negligence where a defendant's blasting operation causes injury to the plaintiffs' property, unless rocks or debris actually invade the confines of the plaintiffs' land.
Judicial restraint compels us to await the appropriate case, in an adversary setting, to address any reconsideration of the trespass/negligence dichotomy presented by Coalite. Suffice it to say that here we are not dealing with a vibration/concussion case. Moreover, it is clear from a thorough reading of Martin
that the reliance by the Oregon Supreme Court on the trespass theory of the earlier blasting case was not essential to theMartin holding that deposits of fluoride particulates constituted a trespass upon the plaintiffs' land.
Having shown trespass and nuisance are not always mutually exclusive remedies, we do not wish to intimate that there is no longer a distinction in the two remedies. Indeed, this distinction is evident in the case of Wilson v. Parent, 228 Or. 354, 365 P.2d 72 (1961). There, Plaintiff alleged that her son-in-law, who resided on adjoining property, made vile and obscene gestures toward her and directed vile, obscene and profane language at her. The Plaintiff framed her complaint in nuisance, but a significant portion of the opinion was devoted to the question of whether the intrusions were trespasses.
The Wilson Court stated:
 "[T]he judiciary, though not composed of atomic scientists, fully recognize that dust, smoke, invisible gas, light and sound, and atomic fallout, are propelled over and across the lands of another and sometimes rest thereon, but it seems reasonably obvious that the ether waves moving from the hands of the defendant to the eyes of the plaintiff and the sound waves from his vocal cords to her ears do not constitute trespass to land, even though the damage caused by them be *Page 529 
far more than de minimis." (Emphasis added.)
This conclusion is "reasonably obvious" only when it is realized that the damage in Wilson was not the result of the intensity of the light and noise, but, instead, of its unique nature, i.e., the obnoxious meanings communicated by the words and gestures. Note, 19 Okla.L.Rev. 117 (1966). The facts inWilson represent a de minimis invasion to the interest of possession, but a substantial invasion to the interest of use and enjoyment.
It might appear, at first blush, from our holding today that every property owner in this State would have a cause of action against any neighboring industry which emitted particulate matter into the atmosphere, or even a passing motorist, whose exhaust emissions come to rest upon another's property. But we hasten to point out that there is a point where the entry is so lacking in substance that the law will refuse to recognize it, applying the maxim de minimis non curat lex — the law does not concern itself with trifles. In the present case, however, we are not faced with a trifling complaint. The Plaintiffs in this case have suffered, if the evidence is believed, a real and substantial invasion of a protected interest.
Although we view this decision as an application, and not an extension, of our present law of trespass, we feel that a brief restatement and summary of the principles involved in this area would be appropriate. Whether an invasion of a property interest is a trespass or a nuisance does not depend upon whether the intruding agent is "tangible" or "intangible." Instead, an analysis must be made to determine the interest interfered with. If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies. As previously observed, however, the remedies of trespass and nuisance are not necessarily mutually exclusive.[1]
While the direct/indirect analysis of the nature of the intrusion is not a valid method of determining trespass vis-a-vis nuisance, this analysis must be made in order to determine the elements necessary to prove trespass. If the intrusion is direct, then, under our present law, actual damages need not be shown; nominal damages may be awarded and this will support punitive damages. This is true whether the intrusion is intentional or unintentional.[2]
Under the modern theory of trespass, the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect and, hence, only a nuisance. In order to recover in trespass for this type of invasion [i.e., the asphalt piled in such a way as to run onto plaintiff's property, or the pollution emitting from a defendant's smoke stack, such as in the present case], a plaintiff must show 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the res.
A further clarification of our nuisance/indirect trespass dichotomy is appropriate at this point. In the traditional sense, the law of nuisance applies where the invasion results in no substantial damage to the res, but where there is interference with the use and enjoyment of one's property. *Page 530 
The classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors generally invoke the doctrine of the law of nuisance. These intrusions do not typically result in any actionable damage to the res; the injury caused by such acts usually results in a diminution of the use value of the property causally related to the harmful conduct made the basis of the claim.
We emphasize that these intrusions are not relegated to the nuisance remedy simply because of their indirect nature; rather, they do not constitute a trespass because all of the requisite elements of trespass to land are not present. For an indirect invasion to amount to an actionable trespass, there must be an interference with plaintiff's exclusive possessory interest; that is, through the defendant's intentional conduct, and with reasonable foreseeability, some substance has entered upon the land itself, affecting its nature and character, and causing substantial actual damage to the res. For example, if the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance; but if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist.
On remand, the issue of the proper measure of damages will undoubtedly arise. In its final decree, the trial Court held that the Plaintiffs' property had increased in value as commercial property due to its proximity to the Defendant's lead plant; therefore, Plaintiffs were not allowed to recover of the Defendant. As noted earlier, such a rule would allow industries, as here, to have absolute control over the use of another's property. This clearly is not the rule for measuring damages in trespass cases. Moreover, it overlooks the fact that the appreciation factor is totally unrelated to the wrongful acts complained of.
It is often stated that the measure of damages in trespass cases is the difference between the value of the land before and after the trespass. In Alabama Power Company v. Thompson,250 Ala. 7, 32 So.2d 795, 9 A.L.R.2d 974 (1947), this Court followed the general rule and pointed out that the adaptability of the property for a special purpose affecting its value is an element for the consideration of the jury in assessing damages. Similarly, the fact that Plaintiffs have used their property for a particular purpose (and may have no desire to sell their property at the higher commercial value) is an element to be considered in determining damages. It seems clear that if the "before and after" rule of damages applies, then, the value is not determined based on the best and highest use of the property, but on the owner's desired or previous use.
We note, however, that this may not be a case where the damages are to be based on the difference in value before and after the trespass. This rule is subservient to the underlying proposition for measuring damages in trespass cases: The Plaintiff is ordinarily entitled to an amount which will compensate him for actual damages sustained. Thomas v. Bank ofHurtsboro, 243 Ala. 658, 11 So.2d 370 (1942). In 75 Am.Jur.2d,Trespass § 51, it is stated:
 "No hard and fast principles can be laid down for the measurement of damages in this class of cases. Generally, the rules to be applied depend upon whether or not the injury is permanent or temporary in character. As is the rule generally, in the case of permanent injury, the recovery must include all damages, both past and future. The proper measure of damages is the difference between the value of the realty before the injury and its value after the injury, except where there is a total destruction, when the owner is entitled to recover the entire value.
 "As to temporary injuries, the authorities are not in agreement as to the proper rule generally for their computation. Some courts have applied the rule in actions *Page 531 
of trespass that the cost of restoring the property to its former condition is the proper measure of damages for a temporary injury thereto when this is less than the diminution of the market value of the whole property by reason of the injury, but where the cost of restoration is more than the diminution in the market value, the latter is generally the true measure of damages. In general, the measure of damages for wrongfully depriving the plaintiff of the use of his property is the rental value or the reasonable value of the use of the property during the time he is deprived thereof. Thus for a wrongful ouster of the plaintiff from a portion of his farm, damages may be awarded equal to the difference in the rental value of the farm with and without such portion." (Emphasis ours.)
Alabama has long accepted the dichotomy between permanent and continuous trespass, along with the factual distinctions incident to a determination of the appropriate measure of damages. In Louisville Nashville Railroad Co. v.Higginbotham, 153 Ala. 334, 44 So. 872 (1907), it is stated:
 "And where the trespass is a continuing one, and not of that class of permanent appropriations, to be assessed for all time at once, there may be successive actions for each continuance of the trespass."
In Thomas v. Bank of Hurtsboro, supra, the Court held that where the trespass put the plaintiff out of possession — the measure of damages was the amount that would compensate for use and occupation (i.e., fair rental value).
In conclusion, in determining the amount of damages recoverable by a plaintiff whose property has been trespassed upon, the law is flexible and the rule simple: What will compensate the plaintiff for the injury he has received? In a case such as the present one, it must first be determined whether the alleged intrusion is of a permanent nature or of a continuing nature. If the injury is permanent, damages must be recovered for all time — past, present and future. The measure of damages means the difference in the fair market value of the property before and after the trespass, based on the plaintiff's use of the property or adaptability of the property to a particular use prior to the trespass.
If the nature of the injury is continuous (i.e., during the tenure of the trespass), the plaintiff can recover for the use of his property or its fair rental value. (Also, plaintiff may be able to recover the cost of restoration if this, plus rental value, is less than the diminution in value.) Any damages for future loss must be recovered in a later action if and when a subsequent trespass occurs.
Additionally, as pointed out in Rushing, supra, plaintiffs are entitled to recover for the loss to personal property if the loss is proximately caused by the trespass.
REVERSED AND REMANDED.
All the Justices concur.
[1] Indeed, because of the comprehensive language of our nuisance statute (§ 6-5-120), conduct which rises to the level of trespass to land, generally speaking, would support a nuisance action; the converse, however, is not necessarily true.
[2] We note that a number of jurisdictions have adopted the so-called "modern view" that when the trespass is nondeliberate [unintentional], damages need not be awarded where the trespass causes no actual injury. See 75 Am.Jur.2d Trespass, § 49, at 43. This Court to date, has not accepted this so-called "modern view." The issue whether actual damages must be shown where the trespass is unintentional is not before this Court on this appeal. We leave any reconsideration of this point to a later case where the issue is directly presented.