WILLIAMS et al.; Bishop et al., Appellants and Cross–Appellees,

v.

OEDER, d.b.a. Carl E. Oeder & Sons Sand & Gravel, et al., Appellees and Cross–Appellants; Barrett Paving Materials, Inc., Appellee.*

[Cite as *Williams .v. Oeder* (1995), 103 Ohio App.3d 333.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Nos. CA94–01–005, CA94–01–007, CA94–02–008 and CA94–02–009.

Decided May 22, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1422, 655 N.E.2d 741.

*Young & Alexander Co., L.P.A.,* and *A. Mark Segreti, Jr.,* for appellants and cross-appellees, Iseral and Una Vee Bishop.

*John F. McLaughlin,* for appellees and cross-appellants, Carl E. Oeder and Sons Sand and Gravel.

*Lyons & Fries Co., L.P.A.,* and *William J. Mulvey,* for appellee, Barrett Paving Materials, Inc.

*James J. Montgomery* and *Kevin J. Hopper,* for appellee and cross-appellant, Plainville Concrete Services, Inc.

WILLIAM W. YOUNG, Judge.

Plaintiffs-appellants and cross-appellees, Iseral and Una Bishop ("appellants"), appeal from a jury verdict in favor of defendants-appellees and cross-appellants, Barrett Paving Materials, Inc. ("Barrett"), Plainville Concrete Services, Inc. ("Plainville"), and Carl E. Oeder & Sons Sand & Gravel ("Oeder"). The jury found appellees and cross-appellants ("appellees") not liable for either nuisance or trespass.

Oeder, Barrett, and Plainville operate a sand and gravel processing facility, an asphalt plant, and a concrete plant, respectively. Appellants are two of six original plaintiffs who live in the immediate vicinity and who sued appellees under common-law theories of nuisance and trespass. Appellants claim that appellees' operations generate dust, noise and odors that interfere with their use and ownership of their property.

Iseral Bishop purchased his property on Turtle Creek Road in the early 1960s. His wife, Una, joined him there after their marriage. Oeder, owner of the property upon which appellees conduct their operations, purchased the tract and some miscellaneous on-site equipment in 1972. Before Oeder's purchase, Ohio Gravel Company leased the mineral rights to the tract. Oeder erected a concrete plant on the site in the year it was purchased. Plainville leased the concrete plant in 1986. In 1987, Barrett bought a blacktop plant built on the site in 1980. There was testimony that there had been gravel mining in the immediate area since the 1930s, before the construction of any of the original plaintiffs' homes.

On December 8, 1993, the trial court granted partial summary judgment for appellees, concluding there was no evidence of negligence supporting a qualified nuisance action. The cause proceeded to trial on the issues of absolute nuisance and trespass. The jury eventually found for appellees. Appellants filed a timely notice of appeal.

Oeder and Plainville filed cross-appeals in this case. They set forth a total of three cross-assignments of error based on the trial court's earlier decision to allow appellants to proceed to trial on the issue of absolute nuisance. However, the cross-appeals were not filed within time, and this court does not have jurisdiction to consider them.[1]

On appeal, appellants set forth eight assignments of error. Under their first assignment of error, appellants argue that the trial court abused its discretion in instructing the jury on the "coming to the nuisance defense." The court, quoting in part from *Eller v. Koehler* (1903), 68 Ohio St. 51, 57, 67 N.E. 89, 91, issued the following instruction:

"[The coming to the nuisance] defense may limit any Plaintiffs from recovering on their nuisance claim if that Plaintiff knew of the situation or in the exercise of ordinary care should have known of the situation and voluntarily placed himself or herself in the proximity of an activity which he or she now alleges to be a nuisance. ['][O]ne who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood.['] "

In *Eller*, the Supreme Court implicitly recognized that priority of occupation may be considered along with other evidence in determining whether the use of a nuisance on defendant's property is unreasonable. In *Gruic v. Knight* (App.1933), 15 Ohio Law Abs. 502, 505, the court explicitly recognized this argument, stating: "The fact that [the plaintiff] voluntarily places himself in a situation whereby he suffers inconvenience and injury from my use of my estate,

---

1. Under App.R. 4(B)(1), all cross-appeals should have been filed within ten days of appellants' appeal. Appellants filed their notice of appeal on January 21, 1994, the last day of the thirty-day period for filing such notice. Plainville and Oeder had until January 31, 1994, to file notice of cross-appeal, but did not file their notices until February 1, 1994, one day out of time.

is of importance in determining whether said use of my estate is reasonable and not injurious to such a reasonable use of his estate as he is entitled to."

■ Appellants emphasize that Oeder did not purchase its property until 1972, after they had purchased their lot. However, this court believes that the defense, where applicable, should be premised on the continuity of the claimed nuisance, not necessarily on the continuity of the named defendants.

■ "Coming to the nuisance" does not constitute an absolute bar to a nuisance complaint. However, the argument may be considered as one factor among others relevant in determining whether a defendant's operations are unreasonable. This court concludes that the trial court did not abuse its discretion in instructing the jury that it could consider the "coming to the nuisance defense." Appellants' first assignment of error is overruled.

■ Appellants complain under their second assignment of error that the trial court erred in instructing the jury that it could find appellees liable in trespass only if appellants established that appellees' operations caused "substantial physical harm" to their property. Appellants asked the trial court to instruct the jury that appellees were liable for trespass if their operations caused dust or dirt to fall on appellants' property.

Trespass is often described as any intentional invasion of a plaintiff's interest in the exclusive possession of his or her property. In contrast, a nuisance requires a substantial and unreasonable interference with the plaintiff's use and enjoyment of his or her property. Traditionally, an intrusion on property by airborne particulates was actionable under a nuisance claim but did not constitute a trespass. See Annotation (1980), 2 A.L.R. 4th 1054, 1055.[2]

However, a number of courts nationwide now recognize that the invasion of airborne particulates may interfere with a complainant's interest in exclusive possession and may therefore constitute a trespass. In *Borland v. Sanders Lead Co., Inc.* (Ala.1979), 369 So.2d 523, a widely cited case on the subject, the Alabama Supreme Court laid out the elements of trespass by airborne pollutants:

---

**2.** Under traditional principles, recovery in trespass was unavailable where dust or smoke were repeatedly released over the plaintiff's land. Reynolds, Distinguishing Trespass and Nuisance: A Journey Through a Shifting Borderland (1991), 44 Okla.L.Rev. 227, 232, citing *Thackery v. Union Portland Cement Co.* (1924), 64 Utah 437, 231 P. 813 (no trespass where cement plant released dust and smoke over farm). Trespass has often been defined in terms of a direct or immediate physical or tangible invasion of the plaintiff's property; some courts had held that if an intervening force, such as wind or water, carries pollutants onto the plaintiff's land, then the entry is not "direct." See *Bradley v. Am. Smelting & Refining* (1985), 104 Wash.2d 677, 686, 709 P.2d 782, 787. Other courts considered a "tangible invasion" or "object" to be more substantial than dust, gas, or fumes. *Id.*

"In order to recover in trespass for this type of invasion [in this case pollution emitted from the defendant's smoke stack] a plaintiff must show (1) an invasion affecting an interest in the exclusive possession of his property; (2) an intentional doing of the act which results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and (4) *substantial damages* to the res." (Emphasis added.) *Id.* at 529.

Traditionally, any tangible invasion of property constituted a trespass and entitled a landowner to at least recover nominal damages. However, such a rule is not appropriate where the incursion is the result of airborne particulates. In *Bradley v. Am. Smelting & Refining* (1985), 104 Wash.2d 677, 691, 709 P.2d 782, 791, the court considered the "substantial damages" element for a cause of trespass based on airborne particulates and stated: "No useful purpose would be served by sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and the litigious few would cause the escalation of costs to the detriment of the many."

Although "substantial damage" is not a traditional element of trespass, trespass was not traditionally available as a remedy for airborne particles and pollutants deposited on a plaintiff's land. This court approves of the elements of trespass by airborne pollutants set forth in *Borland* and adopted in *Bradley*. The trial court did not err in instructing the jury that appellees were culpable in trespass for causing dust or dirt to fall on appellants' property only if the jury concluded that appellants had established "substantial damages." Appellants' second assignment of error is overruled.

 Under their third assignment of error, appellants complain that the trial court abused its discretion in excluding evidence that dust emissions from appellees' operations exceeded national Environmental Protection Agency ("EPA") Ambient Air Quality Standards. Appellants' fourth assignment of error involves the trial court's refusal to allow a defense expert to calculate for the jury dust emissions from appellees' operations using "emission factors" created by the United States EPA and utilized by the Ohio EPA. We will address both assignments of error together.

On November 11, 1993, appellees filed a motion *in limine* to preclude appellants from referring to Ohio Ambient Air Quality Standards at trial. The trial court apparently issued an order on this motion; however, appellants did not make the trial court's order part of the record.

During the trial, Tony Wisbeth, an environmental engineer, and Charles Zimmer, an expert in air quality testing and analysis, testified for appellants.

The trial court would not allow these witnesses to testify that the result of certain air quality tests exceeded EPA ambient air quality standards. The court also prevented the witnesses from using "emission factors" in an attempt to demonstrate that dust probably originated from appellees' operations.

Both appellants and appellees cite R.C. 3704.09 of the Ohio Air Pollution Control Act. That section states in pertinent part:

"Determinations made by the director of environmental protection or other persons acting under sections 3704.03 and 3704.04 of the Revised Code shall not be used as evidence in civil actions nor create any presumption of law or finding of fact which shall inure to or be for the benefit of any person other than the state, and sections 3704.01 to 3704.07 of the Revised Code do not create, enlarge, or abrogate existing private rights."

R.C. 3704.03(D) empowers the Ohio Director of Environmental Protection to:

"Adopt, modify, and rescind rules prescribing ambient air quality standards for the state as a whole or for various areas of the state that are consistent with and no more stringent than the national ambient air quality standards in effect under the Federal Clean Air Act[.]"

Appellants argue that R.C. 3704.09 does not apply because they tried to introduce clean air standards promulgated by the federal EPA, not the Ohio EPA. On the other hand, appellees argue that Ohio's "adoption" of the federal standards is a "determination" under R.C. 3704.09. Appellees claim that appellants' attempt to introduce the federal standards is an attempt to avoid R.C. 3704.09.

Appellants want this court to conclude that R.C. 3704.09 does not preclude them from introducing standards established by the federal EPA. However, as far as this court can tell from the available record, the trial court did not explicitly state that R.C. 3704.09 prevented appellants from introducing federal EPA standards.

This court does not know whether the trial court's order was premised solely or in part on R.C. 3704.09. The trial court's order on appellees' motion *in limine* is not a part of the record. This court therefore does not know the scope, the basis, or the reasoning behind the trial court's decision not to allow appellants' experts to testify that samples taken at Turtle Creek Road exceeded EPA standards or use EPA "emission factors." Accordingly, we will not attempt to interpret R.C. 3704.09.

We note, however, that although appellants were not permitted to introduce. evidence that certain air samples exceeded EPA standards, the trial court did allow Wisbeth and Zimmer to compare actual air samples with a background level

of particulates they would expect to find in a rural setting. This background level was based on local governmental data. Appellants were also permitted to compare air samples taken from the area with air samples from other locations. Significantly, the trial court did not permit appellees to introduce evidence that they complied with EPA standards and regulations.

A trial court has broad discretion in determining whether to admit or exclude evidence, and unless the court abused its discretion and materially prejudiced a party, the decision will stand. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1298–1299. After completely reviewing the transcript provided, this court is not convinced that the trial court abused its discretion or materially prejudiced appellants by prohibiting them from introducing evidence that air samples exceeded ambient air quality standards established by the federal EPA or from using federal "emission factors." Appellants' third and fourth assignments of error are overruled.

■ Under appellants' fifth assignment of error they contend that the trial court should not have allowed appellees to introduce evidence that their plants were operated consistent with industry standards. Appellants argue that under absolute nuisance theory culpability is irrelevant. However, there is no indication that the trial court allowed appellees to introduce the evidence complained of as an attempt to demonstrate to the jury that they were not culpable.

Barrett and Plainville argued at trial that their operations did not contribute to the alleged nuisance. Barrett and Plainville had the right to introduce evidence to support this argument. The trial court properly allowed these individual appellees to introduce evidence that they complied with industry standards so that they could attempt to show that they were not responsible for creating or adding to any dirt and dust at the site. Significantly, the trial court gave the jury a limiting instruction on evidence of industry standards, stating that conformity to business practices is not justification for unreasonably "interfering with the property or personal rights of their neighbors * * *." We overrule appellants' fifth assignment of error.

■ Appellants complain under their sixth assignment of error that the trial court abused its discretion in precluding one of appellants' experts from testifying about the unreasonable nature of the dust emitted from appellees' operations. On voir dire, Zimmer offered his opinion that dust levels he observed at Turtle Creek Road were unreasonable and sufficient to minimize appellants' enjoyment of their property. The trial court concluded that the proffered opinion was based on Zimmer's "personal belief as to what was acceptable and not acceptable and was not an 'expert opinion.'" There is no indication in the record that the trial court abused its discretion in not allowing Zimmer to offer his opinion on the issue. Appellants' sixth assignment of error is overruled.

In their seventh assignment of error, appellants object to the following portion of the jury instructions:

"Nevertheless, not all annoyances or inconveniences suffered are compensable. Trivial and everyday and ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of a gravel mine, concrete plant, and asphalt plant are not compensable."

Appellants contend that this instruction erroneously placed the burden on appellants to prove that the level of dust, odor and noise was unusual for these types of operations. They claim this instruction is inconsistent with the nature of an action in absolute nuisance, *i.e.*, strict liability. Appellees note that the language above was taken from *Eller v. Koehler, supra,* 68 Ohio St. 51, 67 N.E. 89. They argue that, when read in context, the statement quoted above is not prejudicial.

The statement quoted above is not a clear or accurate instruction regarding nuisance. However, the statement is only a small portion of the trial court's instruction on appellants' nuisance claim. Where the trial court misstates the law or creates an ambiguity in a portion of its jury instructions, it is not reversible error where the court's instructions, considered as a whole, are not prejudicial to the objecting party. *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, paragraph three of the syllabus. Having reviewed the trial court's instructions on nuisance as a whole, the court is not convinced that they were incorrect or prejudicial. Appellants' seventh assignment of error is overruled.

Appellants' eighth and final assignment of error alleges that the trial court submitted "special verdict" forms to the jury in violation of Civ.R. 49(C). In this case, the trial court submitted distinct verdict forms to the jury on the separate claims of nuisance and trespass. A general verdict is defined as "[a] verdict whereby the jury finds either for the plaintiff or the defendant in general terms." Black's Law Dictionary (5 Ed.Rev.1979) 1399. "The 'special' verdict is a statement by the jury of the facts it has found—in essence, the jury's answers to questions submitted to it; the court determines which party, based on those answers, is to have judgment." *Id.*

In this case, the trial court issued two general verdict forms—one for nuisance and one for trespass. Civ.R. 49 does not prohibit multiple general verdicts. Appellants' final assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

WALSH, P.J., and KOEHLER, J., concur.