United States Court of Appeals,

Eleventh Circuit.

No. 94-7139.

COLONIAL PROPERTIES, INC., a corporation, Inverness Family Medical Center Partners, Ltd., a limited partnership, Plaintiffs-Appellees,

v.

VOGUE CLEANERS, INC., a corporation, Edward N. Burg, Defendants-Appellants,

Edward N. Burg, Jr., Margaret A. Burg, Defendants,

Richard S. Burg, Defendant-Appellant.

March 8, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. 92-Ar-2325-S), William M. Acker, Jr., Judge.

Before EDMONDSON, DUBINA and BARKETT, Circuit Judges.

DUBINA, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:

In this environmental law case, the district court granted partial summary judgment against Defendant-Appellant Vogue Cleaners, Inc. with respect to the request for attorneys' fees by Plaintiffs-Appellees Colonial Properties, Inc. and Inverness Family Medical Center Partners, Inc. (collectively "Landlords"). The district court also granted partial summary judgment with respect to the issue of liability on the Landlords' claim of trespass against Defendants-Appellants Vogue Cleaners, Edward N. Burg, and Richard S. Burg (collectively "Tenants"). On appeal, the Tenants

urge us to reverse the district court's grant of partial summary judgment and to enter judgment as a matter of law in their favor on both the request for attorneys' fees and the trespass claim.

In light of the notice provisions contained in the lease, we conclude that Vogue Cleaners did not default on the lease. Accordingly, the district court erred in awarding the Landlords attorneys' fees, and we now reverse that part of the district court's judgment.

Our holding with respect to attorneys' fees does not, however, dispose of this case. We must still address the Tenants' contention that the district court erred in granting partial summary judgment in favor of the Landlords on the trespass claim. Unfortunately, we have been unable to find, and the parties have not drawn our attention to, any authoritative decision by the Alabama Supreme Court or Court of Appeals that directly answers the question presented by the trespass claim, viz., whether Alabama law allows a landlord to bring an action for trespass against a tenant for damage to a common area. We therefore defer our decision on the trespass claim pending certification of this question to the Alabama Supreme Court.

## I. STYLE OF THE CASE

The style of the case is as follows: Colonial Properties, Inc., a corporation, Inverness Family Medical Center Partners, Ltd., a limited partnership, Plaintiffs-Appellees v. Vogue Cleaners, Inc., a corporation, Edward N. Burg, Defendants-Appellants, Edward N. Burg, Jr., Margaret A. Burg, Defendants, Richard S. Burg, Defendant-Appellant (D.C. Docket No. CV 92-AR-

2325-S).  This case is assigned number 94-7139 in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Alabama.

## II. STATEMENT OF THE CASE

A. *Factual History.*

This case arose out of the Tenants' practice of pouring toxic material onto a curb adjacent to their dry cleaning business. Beginning in July of 1983, Vogue Cleaners rented a store located in the Heatherbrooke Shopping Center in Shelby County, Alabama, from the Landlords.  Edward N. Burg, Sr., the chief executive officer of Vogue Cleaners, managed the Heatherbrooke store from 1983 until his retirement in 1987.  Richard S. Burg, his son, took over the management of the Heatherbrooke store after his father's retirement.  Richard S. Burg is also the company's vice-president.

Vogue Cleaners is a dry cleaning operation.  One of the machines used in its operation—the Permac machine—uses a hazardous substance known as perchloroethylene, or "perc."  As part of the dry cleaning process, perc is injected with steam to purify it for later reuse.  The perc-filled steam is then condensed into a liquid solution of perc and water.  Once in liquid form the higher-density perc drops to the bottom of the container, and the water is drained from the top through a hose and into a five gallon jug.

During its operation, Vogue Cleaners employed either Safety Kleen or Clean Way Corporation to dispose of the hazardous waste products generated by the Permac machine at its Heatherbrooke location.  However, the disposal companies carried away only two of the three waste products generated by the Permac machine.  In spite

of the fact that the disposal companies provided Vogue Cleaners with barrels in which to place the perc-contaminated water, Vogue Cleaners instructed its employees to pour this waste product onto the curb behind the Vogue Cleaners facility.

On two occasions, workers were burned by perc-contaminated water that collected in holes they had dug to gain access to the sprinkler systems located about the Heatherbrooke store. The first incident involved Richard Grimes, the superintendent of maintenance employed by one of the Landlords. The second incident occurred on October 2, 1990. On that occasion, the perc-contaminated water burned the plumbers' hands and arms and induced nausea and dizziness. It is this latter incident which eventually led to the filing of the suit *sub judice.*

The Emergency Response Management and Training Corporation and the Alabama Department of Environmental Management ("ADEM") were called to the scene to secure the area where the accident occurred. An investigation followed, and ADEM concluded that the plumbers' injuries were caused by exposure to perc. ADEM also concluded that the perc contamination had reached the groundwater under the site. ADEM issued a Notice of Violation and a proposed Administrative Order requiring Vogue Cleaners to submit further reports to enable ADEM to assess the full extent of the perc contamination of the soil and groundwater.

B. *Procedural History.*

On October 1, 1992, the Landlords filed this suit against the Tenants in federal district court seeking recovery under both the Comprehensive Environmental Response, Compensation, and Liability

Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607, 9613(f), and common law tort and contract theories. In a pre-trial order, the district court dismissed with prejudice the Landlords' state claims of intentional misconduct; negligence; negligent, wanton, and reckless conduct; nuisance; and respondeat superior. In the same order, the district court declared CERCLA and trespass liability against all Tenants, declared breach of the lease agreement and indemnification liability against Vogue Cleaners only, and left the determination of damages to the jury. Furthermore, the district court dismissed with prejudice the claims for attorneys' fees under CERCLA and those claimed against any defendant other than Vogue Cleaners. With respect to Vogue Cleaners, the district court declared liability for attorneys' fees in favor of the Landlords as part of Vogue Cleaners' liability under the breach of the lease agreement and indemnification claims.

In the final judgment order, the district court granted judgment as a matter of law with respect to damages of $9,815 on the CERCLA claim. The district court submitted the remaining damages claims to the jury on special interrogatories. The jury found diminution in the fair market value of the property in the amount of $100,000 and awarded attorneys' fees in favor of the Landlords in the sum of $75,000.

### III. DISCUSSION

The central question that must be decided in order to determine whether the district court properly granted partial summary judgment in favor of the Landlords on the trespass claim is whether, under Alabama law, a landlord can bring an action for

trespass against a tenant for damage to a common area. The Tenants draw our attention to *Borland v. Sanders Lead Company,* 369 So.2d 523 (Ala.1979), in which the Alabama Supreme Court listed the elements of trespass as follows: "1) an invasion affecting an interest in the exclusive possession of [the plaintiff's] property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage to the Res." *Id.* at 529. The Tenants claim that the Landlords cannot maintain an action for trespass to the common areas because the Landlords did not have *exclusive* possession of those areas. According to the Tenants, the Landlords could not have excluded them entirely from the common areas, and therefore the Landlords have no exclusive possessory interest against them.

The Landlords, on the other hand, contend that *Borland* is not controlling. They note, correctly, that *Borland* did not involve a dispute between a landlord and a tenant. According to the Landlords, they retained, *vis-à-vis* the Tenants, sufficient possession and control of the common areas to maintain an action for trespass. In support of their argument, they cite a Missouri Court of Appeals case which held that a landlord retains sufficient control of the common areas to support an action for trespass against invitees of a tenant. *See Motchan v. STL Cablevision, Inc.,* 796 S.W.2d 896, 900 (Mo.Ct.App.1990). *But see L.D.L. v. Florida,* 569 So.2d 1310 (Fla.Dist.Ct.App.1990) (landlord does not have possessory interest in common areas sufficient to maintain an action for criminal trespass against a tenant's invitee). The

district court found the reasoning of the *Motchan* court persuasive and concluded that the Alabama courts would follow the reasoning of *Motchan* if they were ever confronted with the issue.

While the district court may have been entirely correct in its prediction that the Alabama courts would follow the reasoning of *Motchan* if confronted with the issue, the fact remains that this is a case of first impression under Alabama law.[1]  Rather than speculating about how the Alabama courts would answer this question, we prefer to certify the issue for resolution by the Alabama Supreme Court.  As we have recently said, "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[2] "guesses' and to offer the state court the opportunity to interpret or change existing law."   *Mosher v. Speedstar Div. of AMCA Int'l, Inc.,* 52 F.3d 913, 916-17 (11th Cir.1995).  If Alabama law recognizes a cause of action by a landlord against his or her tenant for trespass to common areas, then the district court's grant of partial summary judgment on the issue of liability was correct.  If not, then the district court's grant of partial summary judgment should be reversed, and we should enter judgment as a matter of law in favor of the Tenants with respect to the issue of liability.

IV. QUESTION TO BE CERTIFIED TO THE ALABAMA SUPREME COURT

---

[1]At oral argument, counsel for the Landlords admitted that there is no case from the Alabama courts that directly controls the resolution of the issue presented here.

[2]*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

We certify the following question to the Alabama Supreme Court:

Whether, under the facts of this case, Alabama law allows a landlord to maintain a cause of action for trespass against a tenant for damage to a common area.

Our statement of the question is not designed to limit the inquiry of the Alabama Supreme Court. As we have said before, the particular phrasing of a question we certify to a state's highest court is not intended "to restrict [its] consideration of the problems involved and the issues as [it] perceives them to be in its analysis of the record certified in [the] case." *Mosher,* 52 F.3d at 917 (quoting *Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968)).

To assist the Alabama Supreme Court, we hereby order that the entire record in this case, together with the briefs of the parties, be transmitted herewith.

REVERSED in part and QUESTION CERTIFIED.