DECISION AND JOURNAL ENTRY
Defendant John R. Casto appeals his convictions in the Medina County Court of Common Pleas. We affirm.
 I.
In early 1998, Defendant lived in an apartment in Seville, Ohio, with his wife, Rebecca Casto, and his wife's two daughters, Nina Formosa, who was fifteen years old, and Amanda Formosa, who was fourteen years old. Nina was friends with Jen Reidy, who was also fifteen years old and who lived with her mother in another apartment near Defendant's residence. Living in the apartment below Jen and her mother were Jim Foote, Lezjon Mantz, and Brad Nelson. Nelson, who was twenty-three years old, was intimately involved with Nina.
One night in March or April 1998, a party was held at Defendant's residence. Those in attendance included Defendant, his wife, Nina, Amanda, Jen, Foote, Mantz, and another man, Darryl Myers.[1] Everyone at the party drank alcohol. At some point, Nina and Jen announced that they were going to become strippers. When others present stated that they did not believe this announcement of vocational intent, Nina and Jen proceeded to strip in front of everyone at the party. Defendant's wife retrieved a Polaroid camera and took nine or ten photographs of the two girls stripping and dancing. Defendant was present and did nothing to discourage the girls' performance or his wife's photography. The photographs were then passed around to those in attendance.
Afterwards, Defendant's wife retained most of the photographs and kept them on top of a dresser in her bedroom. Nina kept three or four photographs, including two that were described as depicting Jen and herself performing cunnilingus on one another. Sometime between April and August of 1998, Jim Foote and Lezjon Mantz left the apartment they shared with Brad Nelson, and Nina moved in with Nelson.
In August 1998, Nina broke up with Nelson and left the apartment. On the evening of August 17, 1998, Nina and Defendant's wife contacted the Seville Police, and Sergeant Don Burson responded to Defendant's residence. Nina and Defendant's wife told Sergeant Burson that they wanted to retrieve some of Nina's belongings from Nelson's apartment. Among the belongings that were mentioned to Sergeant Burson were a dog, some of Nina's clothing, and the photographs of Nina and Jen that Nina had kept.
Sergeant Burson went to Nelson's apartment and asked for the return of Nina's belongings. Nelson refused to give him the dog but handed over the clothing. Sergeant Burson then spoke with Nelson and Lezjon Mantz, who was also present, about the photographs. Based on information obtained from Mantz, Sergeant Burson obtained a search warrant for both Nelson's apartment and Defendant's residence.
Sergeant Burson served the search warrant on Defendant's residence. He was accompanied by Officer Ivan Reed of the Seville Police Department, and Deputy Chad Meyers and Deputy Sanford of the Medina County Sheriff's Office. Sergeant Burson found the door to the apartment open, knocked, and announced that he had a search warrant. Defendant's wife said, "You're here about the pictures of Nina. I know the pictures that you're talking about[,]" and indicated that the photographs were on a dresser in her bedroom. A search of the bedroom produced six photographs, two pipes that had a dark resin in the basin and that had the smell of burnt marijuana, an unused wooden pipe, a bag that contained a leafy substance consistent with marijuana, and several bottles of prescription drugs. In reference to the pipes and the bag, Defendant told the police that they were mementos of his youth and that he did not use them.
Defendant was indicted on one count of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(1); one count of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(2); one count of endangering children, in violation of R.C. 2919.22(B)(5); two counts of possession of a controlled substance, in violation of R.C. 2925.11(A); and one count of possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). Defendant pleaded not guilty to the charges.
A jury trial was held on March 8-12, 1999, for both Defendant and his wife. The State presented the testimony of eight witnesses: Jim Foote, Lezjon Mantz, Nina, Jen Reidy, Sergeant Burson, Officer Reed, Deputy Meyers, and a forensic scientist. Nina was called as a hostile witness. Defendant presented the testimony of his wife's sister and Amanda. After deliberating, the jury found Defendant guilty of illegal use of a minor in nudity-oriented material or performance, endangering children, and possession of drug paraphernalia and not guilty of the other three charges.
Prior to sentencing, Defendant moved for a new trial, based on jury misconduct. The trial court denied the motion. At sentencing, the trial court imposed a thirty-day term for the possession of drug paraphernalia and four-year prison terms on the other two counts, with all terms to be served concurrently. Defendant timely appealed to this court.
 II.
Defendant asserts six assignments of error. We will address each in due course, rearranging their order and consolidating related assignments of error to facilitate discussion.
 A. Evidentiary Issues Third Assignment of Error THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS PURSUANT TO EVID. R. 404(B) AND R.C. 2945.59.
In his third assignment of error, Defendant argues that the trial court should not have permitted testimony from various witnesses about other possible bad acts or crimes that Defendant committed. Defendant makes specific reference to testimony about alcohol consumption by persons under the age of twenty-one in Defendant's presence, illegal drug use, and testimony that intimated that Defendant consented to the commission of a crime by allowing Nina (who was fifteen) and Brad Nelson (who was twenty-three) to sleep together and ultimately to live together.[2] Defendant contends that the testimony at issue was not admissible. Defendant's argument is not well taken.
A trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party. Williams v. Oeder (1995), 103 Ohio App.3d 333, 341. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
We also note that, with one exception, Defendant did not object to the testimony at issue. Therefore, we can only take notice of the error if it rises to the level of plain error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995), 108 Ohio App.3d 477,482.
With regard to the testimony that Defendant did not object to, we conclude that there was no plain error. The testimony relating to alcohol consumption, especially by Nina, served to give the jury a background to the events that unfolded and to rebut Nina's assertion that no alcohol other than beer was consumed that night, when other witnesses testified that beer was not the only alcoholic beverage imbibed by those present. The questioning about illegal drug use was connected with drug charges against Defendant. Also, testimony about the relationship between Nina and Brad Nelson gave the jury background information as to why Nina's belongings were in his apartment. We cannot say that, but for the testimony at issue here, the result of the trial would have been different.
The one instance of testimony that Defendant objected to came from Jim Foote, who was twenty years old at the time of the trial. The State asked if he had consumed alcohol in the presence of Defendant. Defendant objected, and the trial court overruled the objection. Foote then stated that he had consumed alcohol in Defendant's presence.
Assuming arguendo that the testimony was erroneously admitted, we discern no prejudice to Defendant. As with the other testimony, Foote's statement set the stage for the party that culminated in the photographing of Nina and Jen. A jury is not precluded from being informed of the setting of a case. SeeState v. Thompson (1981), 66 Ohio St.2d 496, 498. We find no abuse of discretion. Defendant's third assignment of error is overruled.
 B. Sufficiency of the Evidence First Assignment of Error THE TRIAL COURT ERRED IN FAILING TO GRANT [DEFENDANT'S] MOTION FOR ACQUITTAL PURSUANT TO CRIM. R. 29 UPON THE CHARGE OF CHILD ENDANGERING AND ILLEGAL USE OF A MINOR IN NUDITY ORIENTED MATERIAL OR PERFORMANCE.
 Fifth Assignment of Error THE TRIAL COURT ERRED IN FAILING TO GRANT [DEFENDANT'S] MOTION FOR ACQUTTAL PURSUANT TO CRIM. R. 29 ON THE CHARGE OF POSSESSING DRUG PARAPHERNALIA.
In his first and fifth assignments of error, Defendant argues that there was insufficient evidence to support his three convictions. Each offense will be addressed separately.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
1. Illegal Use of a Minor in Nudity-Oriented Material or Performance
Defendant was convicted on one count of illegal use of a minor in nudity-oriented material or performance. R.C.2907.323(A)(2) states in part that, subject to exceptions that are not urged as applicable in this appeal, "[n]o person shall * * * [c]onsent to the photographing of the person's minor child or ward, or photograph the person's minor child or ward, in a state of nudity or consent to the use of the person's minor child or ward in a state of nudity in any material or performance[.]" The term "state of nudity" has been construed to mean "nudity [constituting] a lewd exhibition or [involving] a graphic focus on the genitals." State v. Jewell (Aug. 22, 1997), Montgomery App. No. 16254, unreported, 1997 Ohio App. LEXIS 3702, at *4, citingState v. Young (1988), 37 Ohio St.3d 249, paragraph one of the syllabus, reversed on other grounds sub nom. Osborne v. Ohio
(1990), 495 U.S. 103, 109 L.Ed.2d 98. The term "lewd" has been defined as "`sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *.'" (Alterations in original.) State ex rel. RearDoor Bookstore v. Tenth Dist. Court of Appeals (1992),63 Ohio St.3d 354, 358, quoting Webster's Third New International Dictionary (1986) 1301. It is not required that a photograph depicting a lewd exhibition show sexual activity in order to violate R.C. 2907.323(A)(2). State v.Jewell, supra, at *7.
Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence to support Defendant's conviction for violating R.C. 2907.323(A)(2). Jim Foote and Lezjon Mantz testified that Defendant was present when his wife took the photographs and watched the events as they unfolded without objection. Two of the photographs depict Jen and Nina (Defendant's stepdaughter) positioning their nude bodies against one another in a decidedly sensual manner. There was also testimony that there were two other photographs (destroyed by Brad Nelson) that were described as depicting the two nude girls performing cunnilingus on one another. These photographs meet the definition of a lewd exhibition.
Defendant argues that he cannot be convicted of this offense because R.C. 2907.323(A)(2) requires that the minor involved be the offender's "child or ward." He contends that because he is Nina's stepfather, Nina is not his natural child or his ward. Defendant's argument is not well taken.
R.C. 2907.323(A)(1) deals with photographing or otherwise creating material or performance involving a minor in a state of nudity when the minor is not the offender's child or ward; R.C.2907.323(A)(3) forbids the viewing or possession of material or performance that shows a minor in a state of nudity when that minor is not the offender's child or ward. However, there is no comparable provision dealing with a person who consents to have a minor who is not his or her child or ward be photographed or participate in a performance in a state of nudity. R.C.2907.323(A)(2) presupposes that the offender is capable of giving such consent. We find that the Ohio General Assembly intended to include within the ambit of R.C. 2907.323(A)(2) any person who is capable of giving such consent, such as a stepparent. A contrary conclusion would produce a result that is not "just and reasonable." R.C. 1.47(C).
In the case at bar, Defendant had been Nina's stepfather for practically her entire life, and she regarded Defendant as her father. Defendant exercised authority over Nina in the same manner a parent would over his or her child. As such, Defendant was in a position to consent (or object) to the photographing of Nina in a state of nudity. We conclude that Nina was, for the purposes of R.C. 2907.323(A)(2), Defendant's child or ward.
There was sufficient evidence that Defendant consented to Nina being photographed in a state of nudity constituting a lewd exhibition. The trial court did not err by overruling Defendant's motion for acquittal on this count.
2. Endangering Children
Defendant was also convicted on one count of endangering children. R.C. 2919.22(B) provides:
 No person shall do any of the following to a child under eighteen years of age * * *:
* * *
 (5) Entice, coerce, permit, encourage, compel, hire, employ, use, or allow the child to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter.
Obscenity is defined in RC. 2907.01(F), which reads in pertinent part:
 When considered as a whole, and judged with reference to ordinary adults * * *, any material or performance is "obscene" if any of the following apply:
(1) Its dominant appeal is to prurient interest;
 (2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite[.]
The Ohio Supreme Court has held that the statutory definition of obscenity incorporates the guidelines for obscenity set forth by the United States Supreme Court in Miller v.California (1973), 413 U.S. 15, 37 L.Ed.2d 419. State v.Burgun (1978), 56 Ohio St.2d 354, paragraph one of the syllabus.
The Supreme Court held in Miller that the following criteria are to be used to determine whether a work is obscene:
 (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
 Miller, 413 U.S. at 24, 37 L.Ed.2d at 431, quoting Kois v.Wisconsin (1972), 408 U.S. 229, 230, 33 L.Ed.2d 312, 315, quoting Roth v. United States (1957), 354 U.S. 476, 489,1 L.Ed.2d 1498, 1509. In State v. Hunt (Jan. 15, 1997), Lorain App. No. 96CA006414, unreported, at 8-9, this court discussed the application of Miller:
 "Prurient" interest is a "shameful or morbid interest in nudity, sex, or excretion * * * [which] goes substantially beyond customary limits of candor in description or representation of such matters * * *." Urbana
[ex rel. Newlin v. Downing (1989)], 43 Ohio St.3d [109,] 116, quoting Roth v. United States[, 354 U.S. at 487, 1 L.Ed.2d at 1508,] fn. 20. Whether a work appeals to the prurient interest or depicts sexual conduct in a patently offensive way is governed by contemporary community standards. [State v. Radey (1989),] 54 Ohio App.3d [18,] 19, citing Pope v. Illinois (1987), 481 U.S. 497, 95 L.Ed.2d 439. In contrast, the reasonable person standard is used to determine whether the work has literary, artistic, political, or scientific value. Id. To be patently offensive, the work must depict or describe "hard core" sexual conduct. State v. Ward
(1993), 85 Ohio App.3d 378, 381. This requirement is satisfied if the material depicts or describes activity which meets the definition of "sexual conduct" found at [R.C. 2907.01(A)]. See Id. at 381-382.
(First three alterations in original.) The definition of sexual conduct in R.C. 2907.01(A) includes "cunnilingus between persons regardless of sex[.]" Our review of a determination that a work is obscene is de novo. Radey,54 Ohio App.3d at 19.
There was testimony that Defendant permitted his wife to take two photographs, which were not entered into evidence at trial, that were described as depicting Jen and Nina performing cunnilingus on each other. First, we must determine if the photographs, as described by Nina, meet the statutory definition of obscenity. We find that, with reference to ordinary adults, the dominant tendency of the photographs, as described, is to arouse lust by depicting sexual activity[3] in that manner. Therefore, the first requirement is met.
Next, we turn to determine whether the photographs, as described, are obscene under Miller. The photographs were described as depicting cunnilingus, defined as sexual conduct by R.C. 2907.01(A), between two teenage girls. Applying contemporary community standards, such depictions are patently offensive and appeal to the prurient interest. We further find that the reasonable person would conclude that the photographs, as described, lack serious literary, artistic, political, or scientific value. Accordingly, we find that the photographs, as described, meet the constitutional definition of obscenity.
Defendant argues that the photographs, as described, cannot be obscene because Nina testified that she and Jen were only pretending to perform cunnilingus on each other and did not actually perform the acts. We disagree. In Miller, the Supreme Court gave two examples of conduct that would meet the second part of the obscenity test. The first example was of "[p]atently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated." (Emphasis added.)Miller, 413 U.S. at 25, 37 L.Ed.2d at 431; see, also, Urbana exrel. Newlin v. Downing, 43 Ohio St.3d at 118. The fact that the act of cunnilingus was not actually performed does not prevent a finding that the described photographic depictions meet the definition of obscenity.
Even assuming arguendo that the photographs that were described as depicting the girls performing cunnilingus on one another did not meet the definition of obscenity, we find that there was sufficient evidence to support Defendant's conviction for endangering children. R.C. 2919.22(B)(5) also forbids the use of a minor in "nudity-oriented material." "`Nudity-oriented material' means any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest." R.C. 2919.22(D)(4)(b). A photograph fits the definition of "material." See R.C. 2907.01(J).
The photographs of Nina and Jen that were introduced into evidence showed them in a state of nudity that we previously described as a lewd exhibition. We conclude that the photographs that were introduced into evidence appeal to the prurient interest. Therefore, these photographs depicted a minor in nudity-oriented material.
Viewing the evidence in a light most favorable to the State, a reasonable trier of fact could conclude that Defendant violated R.C. 2919.22(B)(5). The trial court did not err by overruling Defendant's motion for acquittal on the count of endangering children.
3. Possession of Drug Paraphernalia
Finally, Defendant was convicted of one count of possession of drug paraphernalia. R.C. 2925.14(C)(1) states: "No person shall knowingly use, or possess with purpose to use, drug paraphernalia." Drug paraphernalia is defined as "any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in * * * ingesting, inhaling, or otherwise introducing into the human body, a controlled substance in violation of [R.C. Chapter 2925]." R.C.2925.14(A). The definition includes "a metal, wooden, acrylic, glass, stone, plastic, or ceramic pipe" that is used for introducing marijuana into the human body. R.C. 2925.14(A)(12).
At trial, Sergeant Burson testified that when he searched the Defendant's residence he found two pipes that appeared to contain residue from burnt marijuana and a baggie with a leafy substance that appeared to be marijuana, based on Sergeant Burson's training and experience.[4] Defendant told Sergeant Burson that the baggie and pipes were his, but that they were mementos of his past and that he did not use them. Scientific testing of the residue in the pipes was unable to detect the presence of burnt marijuana from the resin in the pipes. However, Sergeant Burson noted the scent of burnt marijuana on the pipes. The baggie containing the leafy substance was found in the same room as the pipes. The jury could reasonably conclude that Defendant used or intended to use the pipes to smoke marijuana. Accordingly, there was sufficient evidence to support Defendant's conviction for possession of drug paraphernalia.
4. Summary
The trial court did not err by overruling Defendant's motion for acquittal under Crim.R. 29 on all three offenses of which he was convicted. The first and fifth assignments of error are overruled.
 C. Allied Offenses of Similar Import Second Assignment of Error THE TRIAL COURT ERRED IN CONVICTING [DEFENDANT] OF CHILD ENDANGERING AND ILLEGAL USE OF A MINOR IN NUDITY ORIENTED MATERIAL OR PERFORMANCE WHERE THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25.
Defendant contends in his second assignment of error that he should not have been convicted of both endangering children and illegal use of a minor in nudity-oriented material because they are allied offenses of similar import. We disagree.
R.C. 2941.25 states:
 (A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In order to determine if two offenses are allied offenses of similar import, a two-part test is used.
 In the first step, the elements of the two crimes are compared If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
(Emphasis sic.) State v. Blankenship (1988), 38 Ohio St.3d 116,117. Under the first part of the analysis, "the statutorily defined elements of the offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) State v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus.
Assuming arguendo that the two offenses are allied offenses of similar import, we conclude that Defendant was properly convicted of both. "[W]here a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense." State v. Gregory
(1993), 90 Ohio App.3d 124, 129. In the case at bar, there were two minors involved: Nina and Jen. The conviction for illegal use of a minor in nudity-oriented material dealt solely with Nina (Defendant's stepchild), while the endangering children conviction stemmed from the photographing of Jen. Because there were two separate victims, a separate animus existed for each of the offenses, and Defendant's convictions were proper under R.C.2941.25. The second assignment of error is overruled.
 D. Jury Misconduct Fourth Assignment of Error THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL AND [DEFENDANT'S] MOTION FOR NEW TRIAL DUE TO JURY MISCONDUCT.
Defendant asserts in his fourth assignment of error that the trial court erred by not granting either his motion for a mistrial or his motion for a new trial. At some point during the trial, individual jurors wrote down five questions and gave them to the trial court's bailiff. The bailiff did not notify the trial court or counsel about these questions. After beginning its deliberations, the jury as a whole submitted different questions to the bailiff, who delivered the questions to the trial court and counsel. At that time, the existence of the earlier questions came to light. Defendant moved for a mistrial, and the trial court denied the motion. After the trial but prior to sentencing, Defendant moved for a new trial. That motion was also denied. Defendant contends that the questions submitted by individual jurors during the trial demonstrated that those jurors were deliberating and deciding facts before the case was submitted to the jury and that the trial court should have granted either of the relevant motions. We disagree.
A trial court's ruling on a motion for a mistrial or for a new trial under Crim.R. 33 will be reversed only for an abuse of discretion. State v. Stewart (1996), 111 Ohio App.3d 525, 533
(mistrial); State v. Haddix (1994), 93 Ohio App.3d 470, 480 (new trial). The essential inquiry for both motions is whether the substantial rights of the accused are adversely or materially affected. State v. Nichols (1993), 85 Ohio App.3d 65, 69
(mistrial); Crim.R. 33(A) (new trial). "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127. A defendant may move for a new trial under Crim.R. 33(A) upon a showing of one of six grounds; two of those bases are irregularity in the proceedings and jury misconduct. Crim.R. 33(A)(1) and (2).
Defendant's argument is centered in the five questions submitted to the trial court's bailiff during the trial. Four of the five questions were brief and indicated that the juror who submitted the question perceived some gap in the evidence or anticipated the presentation of the law in the jury instructions. One question asked for a "brake down [sic] in English of all charges"; another inquired about the legality of having "these pipes in your house without using them[.]" A third question asked about a section of the Revised Code to which a witness had referred, and the fourth merely asked whether any more testimony would be given as to who Jimmy Casto was or how old he was. The fifth question contained two factual queries relating to Sergeant Burson's questioning of Lezjon Mantz and where Nina displayed one of the photographs of Jen and herself.
None of the questions indicates that the jurors who submitted them had begun to form an opinion about the case. Each is a reasonable manifestation of jurors seeking to understand the proceedings before them and diligently attempting to fulfill their duties as jurors. Nothing in the questions suggests that Defendant's substantial rights were materially affected by the jurors. Therefore, the trial court did not abuse its discretion by overruling the motion for a mistrial and the motion for a new trial. Defendant's fourth assignment of error is overruled.
 E. Ineffective Assistance of Trial Counsel Sixth Assignment of Error TRIAL COUNSEL WAS INEFFECTIVE IN REPRESENTING [DEFENDANT] BY FAILING TO PRESERVE ERRORS FOR APPEAL AND FILING AN IMPROPER MOTION FOR NEW TRIAL.
For his sixth and final assignment of error, Defendant argues that he was denied his constitutional right to the effective assistance of trial counsel. He asserts that his trial counsel was ineffective by failing to enter objections to certain questions about drug use, underage drinking, and Nina's relationship with Brad Nelson, as discussed in the third assignment of error.[5] Defendant's argument is not well taken.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100.
We find that Defendant has failed to demonstrate that he was prejudiced by his trial counsel's performance. As we noted in our discussion of the third assignment of error, it cannot be said that, but for the failure to object to those questions, the outcome of Defendant's trial would have been different. Therefore, Defendant has not shown ineffective assistance under Strickland and Bradley. Defendant's sixth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT, CARR, J., CONCURS, BAIRD, P. J., CONCURSIN JUDGMENT ONLY.
[1] There was also testimony from witnesses that Brad Nelson or Jimmy Casto (a cousin of Nina and Amanda) was present.
[2] See R.C. 2907.04, "Corruption of a minor."
[3] "Sexual activity" includes sexual conduct, as defined in R.C. 2907.01(A). R.C. 2907.01(C).
[4] The substance was not scientifically tested to determine whether it was in fact marijuana.
[5] Defendant states in his brief: "Assuming that the various errors set forth above in the earlier Assignments of Error have not been properly preserved for appeal, the failure to properly preserve said errors through proper objections is ineffective assistance of trial counsel." The only portion of Defendant's arguments that we have not discussed on the merits were those evidentiary issues that we reviewed only for plain error in the third assignment of error. Therefore, we will limit our discussion of ineffective assistance of trial counsel to those alleged errors.