OPINION
Plaintiffs-appellants/cross-appellees, David Hager, et al., timely appeal a decision rendered by the Columbiana County Court of Common Pleas, whereby the trial court granted summary judgment in favor of defendants-appellees/cross-appellants, Waste Technologies Industries, Inc. (WTI)[1].
In 1980, the Columbiana County Port Authority announced the development of a lease arrangement for a hazardous waste storage and treatment facility to be located in East Liverpool, Columbiana County, Ohio which would be operated by WTI. This facility is a regulated facility, and WTI obtained the necessary state and federal permits. Construction of the facility was completed in April 1992. WTI commenced waste incineration operations in December of 1992.
The WTI facility monitors emission data including emission of air pollutants and particulate matter. The facility employs various methods in its attempt to eliminate and/or prevent airborne pollution including precipitators, scrubbers, and vapor recovery systems.
On January 9, 1997, appellants filed a complaint in the Columbiana County Court of Common Pleas seeking class action certification and damages against WTI.[2] Appellants' complaint against WTI consisted of causes of action arising in trespass, nuisance, and negligence. Appellants essentially complained that WTI's waste incinerator has adversely affected the surrounding water, air, land, and the public's perception of the health and safety of the area in question. Appellants sought damages for the diminution of the value of their property, which they alleged, resulted from WTI's operation of its hazardous waste incineration facility.
The potential class includes owners of real estate in Ohio, West Virginia, and Pennsylvania whose real property is in proximity to WTI's hazardous waste incinerator. The potential class has been estimated to comprise approximately 16,500 parcels of property, with an unknown number of individuals.
WTI filed its answer denying the allegations set forth in appellants' complaint and also set forth a series of counterclaims against appellants which were later voluntarily dismissed pursuant to Civ.R. 41(C). In addition, the parties also filed a myriad of pretrial motions.[3] On May 18, 2000, WTI moved for summary judgment on all of appellants' claims. Appellants filed a brief in opposition to summary judgment. In a judgment entry filed June 28, 2000, the trial court granted summary judgment in favor of WTI and dismissed appellants' complaint in its entirety.
Appellants filed a timely notice of appeal on July 27, 2000, while WTI filed a timely notice of cross-appeal on August 4, 2000. In addition, the parties have also filed motions on appeal. We have sustained appellants' motion for pro hac vice admission and a motion to substitute and dismiss certain plaintiffs from this appeal. Two motions remain pending appellants' motion for sanctions and WTI's motion to strike.
 STANDARD OF REVIEW
The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280. The court stated:
"We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511. When reviewing a summary judgment case, appellate courts are to apply a de novo standard of review. Cole v. AmericanIndus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552.
Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603. In determining whether a genuine issue of material fact remains to be litigated, the court must turn its attention to the substantive law of the claim being litigated.
Appellants' first, second, fourth, and sixth assignment of error respectively provide:
"The Trial Court, in employing the standard of review to decide whether summary judgment was appropriate, failed to apply vital elements of the proper summary judgment analysis, and therefore committed an abuse of discretion. (Tr.Ct.Op. pp. 4-5)
"The Trial Court ignored those parts of the record that raised genuine issues of material fact, in essence, the trial court committed plain error in finding that the record as presented by the non-movants demonstrated that there were no genuine issues of material fact. (Tr.Ct.Op. pp. 7-8)
"The Trial Court abused its discretion when it found that, as a matter law, the movants were entitled to summary judgment. (Tr.Ct.Op. p. 7-8)
"The Trial Court did not construe the evidence strongly in favor of the non-movants. (Tr.Ct.Op. p. 10)"
Since the trial court's summary judgment determination is reviewed de novo, these assignments of error need not be separately addressed, but will be addressed in a thorough manner in the summary judgment analysis of each particular claim.
 STATUTE OF LIMITATIONS
As a preliminary matter, we need address WTI's second cross-assignment of error which states:
"The trial court erred in determining that Plaintiffs' complaint was not time-barred by the four-year statute of limitations in R.C. §2305.09. (Opinion and Judgment Entry at p. 12)"
WTI argues that the trial court erred below by failing to grant summary judgment as to appellants/cross-appellees' claims of trespass and nuisance on the basis that dismissal was warranted because the causes of action fell within the four-year statute of limitations set forth in R.C. 2305.09. WTI argues that cross-appellees essentially allege causes of action in permanent nuisance and permanent trespass. As such, WTI argues that the statute of limitations under R.C. 2305.09 ran and accrued prior to cross-appellees' filing of their trespass and nuisance claims.
WTI argues that the statute of limitations began to accrue once it began its operation in 1992. WTI points to the fact that cross-appellees appear to contend that they began to suffer property damage/diminution in the value of their property at the time WTI commenced its operations. Therefore, WTI contends that the statute of limitation on cross-appellees' claims for trespass and nuisance lapsed in 1996, prior to appellants filing suit in January 1997.
In response to WTI's arguments, cross-appellees argue that their claims essentially arise out of claims for continuous nuisance and a continuous trespass. Cross-appellees testified that WTI allegedly emitted odors, dust, or pollutants from its facility at various times over the course of its operation. As such, cross-appellees argue that they have alleged a continuing, not a permanent, trespass and nuisance.
R.C. 2305.09 provides in pertinent part:
"An action for any of the following causes shall be brought within four years after the cause thereof accrued:
"(A) For trespassing upon real property;
"(B) For recovery of personal property, or for taking or detaining it;
"(C) For relief on the ground of fraud;
"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12[,] 2305.14 and1304.35 of the Revised Code." (Footnote omitted.)
"It has long been the policy of the law to require that actions involving allegations of tortious conduct be asserted promptly." LawyerCooperative Publishing Co. v. Muething (1992), 65 Ohio St.3d 273, 280, citing State ex rel. Lien v. House (1944), 144 Ohio St. 238, 247. "Where a nuisance in the form of air pollution is permanent in that the structure giving rise to the pollution is of a permanent nature, pollution is consistently produced and is not practicably abatable, the statute of limitations begins to run at the time that the nuisance begins or is first noticed, provided that the permanent nature of the nuisance can be ascertained at that time." Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 718, citing Annotation, When Statutes of Limitations Begins to Run as to Cause of Action for Nuisance Based on Air Pollution (1983), 19 A.L.R.4th 456, 459-60, Section 2[a]. "Conversely, where an air pollution nuisance is temporary or recurrent in that the pollution is not a constant consequence of the operation or is abatable by reasonable means, a nuisance action can be brought for damages for those injuries incurred within the applicable period, regardless of when the nuisance began." Id., citing Annotation, supra, at 460, Section 2[a].
Applying the law to the facts of the instant case, there is evidence which, when construed most strongly in favor of cross-appellees, indicated that their claims involved a continuous, not a permanent trespass and nuisance. Various cross-appellees testified that the alleged nuisance and trespass were of a continuous and not a permanent nature. For example, cross-appellee Bosco testified that the alleged trespass by WTI through dust and odors was not a constant problem. Deposition of Ralph Bosco at 112-114. Cross-appellee Hager also testified that the presence of odors and dust were not a continuous problem. Deposition of David Hager at 93-95. In addition, cross-appellee Sevy also stated that the odors were not continuous. Deposition of Stephanie Sevy at 107-108. Accordingly, there remained a genuine issue of material fact as to whether the nuisance and trespass were continuing in nature, thereby preventing R.C. 2305.09 from barring cross-appellees' claims.
Therefore, WTI's second cross-assignment of error is without merit.
 TRESPASS
Appellants' third assignment of error states:
 "It was plain error for the Trial Court to find that the non-movants had failed to provide any evidence of `substantial damage' to their collective properties. (Trespass) (Tr.Ct.Op. p. 6)"
Appellants' fifth assignment of error states:
 "It was plain error for the Trial Court to find that the non-movants had failed to provide any evidence of physical damage to their collective properties and that movants' emissions were not traceable to non-movants' collective properties. (Trespass) (Tr.Ct.Op. p. 6)"
Because appellants' third and fifth assignments of error involve common issues of legal analysis, they will be addressed together.
In appellants' third and fifth assignments of error, appellants essentially argue that the trial court erred by granting summary judgment against them as to their trespass claim. Appellants argue that they presented sufficient evidence showing that WTI's operation resulted in polluting substances being deposited upon their property. Appellants point to the testimony of several plaintiffs, in which these plaintiffs state that dust, odors, and intangible substances originating from WTI have entered their properties, remained suspended in the air, or fell upon their properties.
In response to appellants' arguments, WTI asserts that the trial court did not err in granting it summary judgment as to appellants' claim for trespass. WTI argues that since appellants have alleged trespass by odor and emissions, trespass by smoking and polluting substances, and trespass by dust, odors and intangible substances, they were required to establish that the particles, odor, and dust which had entered upon their land originated from WTI's facility. WTI argues that although appellants testified in their depositions that dust and severe odors had accumulated on their land, they could not specifically say and had no proof that the particulate matter, dust, or odors originated from WTI's facilities.
In Williams v. Oeder (1993), 103 Ohio App.3d 333, 339, the Twelfth District Court of Appeals examined the elements necessary to prove a claim of trespass based upon trespass by airborne pollutants:
"[A] number of courts nationwide now recognize that the invasion of airborne particulates may interfere with a complainant's interest in exclusive possession and may therefore constitute a trespass. In Borlandv. Sanders Lead Co., Inc. (Ala. 1979), 369 So.2d 523, a widely cited case on the subject, the Alabama Supreme Court laid out the elements of trespass by airborne pollutants:
"`In order to recover in trespass for this type of invasion [in this case pollution emitted from the defendant's smoke stack] a plaintiff must show (1) an invasion affecting an interest in the exclusive possession of his property; (2) an intentional doing of the act which results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and (4) substantialdamages to the res.' (Emphasis added.) Id. at 529.
"Traditionally, any tangible invasion of property constituted a trespass and entitled a landowner to at least recover nominal damages. However, such a rule is not appropriate where the incursion is the result of airborne particulates. In Bradley v. Am. Smelting Refining (1985),104 Wn.2d 677, 691, 709 P.2d 782, 791, the court considered the `substantial damages' element for a cause of trespass based on airborne particulates and stated: `No useful purpose would be served by sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and the litigious few would cause the escalation of costs to the detriment of the many.'
"Although `substantial damage' is not a traditional element of trespass, trespass was not traditionally available as a remedy for airborne particles and pollutants deposited on a plaintiff's land. This court approves of the elements of trespass by airborne pollutants set forth in Borland and adopted in Bradley." (Brackets sic.)
Applying the summary judgment standard set forth in Dresher, it appears that the trial court did not err in granting summary judgment in favor of WTI as to appellants' claim for trespass.
As a preliminary matter, an analysis of WTI's motion for summary judgment shows that WTI met its initial summary judgment burden outlined in Dresher. WTI set forth evidence showing that appellants had no evidence to support their claim of trespass. Specifically, WTI attached the affidavits of expert witnesses Alfred Sigg (Sigg), and William Lowenbach, Ph.D. (Lowenbach) in support of its argument that there was no genuine issue of material fact as to appellants' trespass claim. Sigg and Lowenbach each opined in their affidavits that there was no evidence of air pollutants or particulate matter trespassing on appellants' property that could be attributed to WTI's facility.
Based upon his expertise, experience, and a review of WTI's emissions data, Lowenbach made the following statements in an affidavit in support of WTI's arguments:
"b. There is no evidence that any alleged violations, operating excursions or other incidents of other than normal operations have had any objectively or scientifically discernable or quantifiable impact outside of the boundaries of the WTI facility.
"c. Actual ambient air pollution monitoring results from air pollution monitoring stations proximate to the WTI facility show no evidence of air pollutants, including particulate matter, which can be attributed to the WTI facility.
"d. Consistent with the actual ambient air pollution monitoring data, actual emissions from the WTI facility confirm that air pollutants and particulate matter emitted from the WTI incinerator stack are present in the stack only in de minimus quantities and concentration, which are rapidly dissipated beyond detectable quantities on-site and in the immediately surrounding environment." (Emphasis sic.) Defendants' Motion for Summary Judgment at Exhibit B.
In addition to the foregoing, Lowenbach also stated that an analysis of stack gas emission samples from the WTI facility also confirmed that WTI's air pollution control system eliminated all visible particulate matter from WTI's stack emissions. Lowenbach stated that any associated air pollution or odors would be slight and virtually imperceptible by human beings outside WTI's facility, and that even if perceived, it is extremely unlikely that such odors would interfere with the use or occupancy of real property surrounding the WTI facility. WTI also supported Lowenbach's affidavit with the affidavit of Sigg. Sigg, who is currently employed as vice president and general manger of Von Roll America, also provided similar testimony in his affidavit that WTI emits no noticeable particulate matter and that any instance of noticeable odors dissipates within a short time.
This expert testimony presented by WTI shows that WTI presented expert evidence negating two elements of trespass. First, WTI's testimony tends to show that there was not an invasion affecting appellants' exclusive possession of their property. Lowenbach and Sigg each testified that no noticeable traces of particulate matter or emissions escape WTI's pollution control systems. Second, Lowenbach and Sigg's testimony tends to show that even if any emissions resulted from WTI's activities, such emissions were so minute as to preclude substantial damages to the rest of appellants' property. Therefore, based upon the foregoing, it appears that WTI met its initial burden under Civ.R. 56(C).
Upon meeting its initial burden under Civ.R. 56, the burden of proof then shifted to appellants to show that there was a genuine issue of material fact as to WTI's liability in trespass. A thorough review of the record shows that appellants failed to meet their reciprocal burden outlined in Dresher by failing to show that a genuine issue of material fact existed as to their claim for trespass. As noted by WTI, although several of the appellants testified that they had observed dust, grit, or particles on their property, virtually all of the appellants conceded that they could not say that this material came from WTI.[4] Several of the appellants also testified that they never observed any particulate matter on their property. In addition, appellants did not sample or analyze the dust, dirt, or other particulate matter on their property to determine the source of this matter or that this matter originated from WTI.
Appellants essentially set forth two arguments in support of the proposition that they have met their reciprocal burden. First, appellants argue that two of the plaintiffs, who are chemists, provided expert testimony that dust, odors, and intangible substances were suspended for variable intervals over appellants' properties and/or were deposited by atmospheric conditions upon their properties. However, a thorough review of the record shows that appellants' arguments are not supported by the testimony presented in the transcripts.
Appellants' arguments reference the depositions of plaintiffs-appellants, Bardun and Pokladnik. Each of these appellants stated that they could not attribute the particulate matter, dust, or odor to WTI's operation. Appellant Pokladnik stated that she could not say that any odors, dust, or particulate matter directly resulted from WTI's operations. Deposition of Randi Pokladnik Dec. 10, 1997 at 49-50. Bardun also presented similar testimony in her deposition when she stated that she had "no real basis" for concluding that the dust and soot present on surrounding properties resulted directly from WTI emissions. Deposition of Robin Bardun Dec. 9, 1997 at 58-59. In addition, it should be noted that as expert witnesses, neither of these appellants conducted any analysis of the dirt or soot which appellants complained of or had any analytical data on the type of emissions from WTI's stack.
Appellants also point to the report by Robert J. Martin, National Ombudsman for the United States Environmental Protection Agency in hopes of establishing a genuine issue of material fact. Appellants argue that this report appears to contradict various assertions set forth in the affidavits of Sigg and Lowenbach. As such, appellants contend that an issue of credibility remains as to the affidavits of Sigg and Lowenbach, and that the trial court therefore erred in granting summary judgment as to appellants' claim for trespass.
As noted by WTI, it appears that appellants' argument is unsubstantiated. A reviewing court cannot add matter to the record before it that was not part of the trial court's proceedings and then decide the appeal on the basis of the new evidence. State v. Ishmail (1978),54 Ohio St.2d 402; Wilmot v. Forest City Auto Parts (June 22, 2000), 8th Dist. No. 75945. As noted by the parties, this report was not a part of the record in the trial court. As such, it is not a proper part of the record that this court may consider in its appellate review.
Given the fact that WTI produced expert testimony stating that it had not committed trespass upon appellants' land, the burden fell upon appellants to establish a genuine issue of material fact as to whether or not WTI committed trespass. Appellants have essentially rested on mere allegations, and thus have failed in their reciprocal burden outlined in Civ.R. 56(C). As reasonable minds could come to only one conclusion that the appellants failed to present sufficient evidence to establish a genuine issue of material fact as to their claim of trespass against WTI, the trial court did not err in granting summary judgment in favor of WTI as to appellants' claim for trespass.
Based of the foregoing analysis, appellants' third and fifth assignments of error are without merit.
 NUISANCE
Appellants' seventh assignment of error states:
 "It was plain error for the Trial Court to find that the non-movants had failed to produce any evidence that pollutants or emissions endangered the health, safety or welfare of the public or caused unreasonable injury or damage. (Statutory Public Nuisance) (Tr.Ct.Op. p. 8)"
Appellants' eighth assignment of error states:
 "It was plain error for the Trial Court to find that the non-movants had failed to present any evidence that movants' emissions created any potential or unreasonable risk of harm to non-movants' collective properties. (Qualified Private Nuisance and Negligence) (Tr.Ct.Op. p. 10)"
Appellants' ninth assignment of error states:
 "It was plain error for the Trial Court to find that non-movants had not presented evidence of a breach of duty and/or that any breach of duty proximately caused injury. (Private Nuisance and Negligence) (Tr.Ct.Op. p. 11)"
Because appellants' assignments of error raised interrelated issues of law and analysis, they will be addressed together.
In appellants' seventh assignment of error, appellants essentially argue that the trial court erred by finding that they failed to present any evidence tending to establish that WTI qualified as a statutory public nuisance. Although appellants recognize that WTI presented evidence, through the affidavits of Sigg and Lowenbach, in which these experts stated that the air pollution control equipment at the WTI facility removes all other humanly perceptible air pollutants before the gas exits the stack, and that there is no evidence of any scientific quantifiable impact or effect upon the real property surrounding the WTI facility, appellants claim to have offered a different set of facts which dispute the validity and credibility of this expert evidence. Appellants point to the testimony of several experts that they allege contradicts WTI's experts and establishes a genuine issue of material fact as to whether or not the toxic waste burned by WTI endangers the health, safety, and welfare of the public.
In response to appellants' arguments, WTI argues that the trial court did not err in finding that appellants had failed to present any evidence that WTI qualified as a public statutory nuisance. WTI argues that the evidence which appellants point to as establishing a genuine issue of material fact was not properly before the trial court. Moreover, WTI argues that appellants are precluded from enforcing the statutory nuisance provision set forth in Ohio Adm. Code 3745-15-07. WTI argues that appellants cannot enforce this administrative regulation as only the director of environmental protection and the attorney general may enforce this regulation.[5]
At the outset, we note the complex nature surrounding the law of nuisance. As noted by Professor Keeton in Prosser Keeton, Law of Torts (5 Ed. 1984) 616, Section 86: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance.'" The term nuisance is used to refer to two separate fields of tort liability. The first of these two categories, public nuisance, covers the invasion of public rights. Restatement of the Law 2d, Torts (1979) 84, Chapter 40, Introductory Note. The other field of liability is called private nuisance. This tort covers the invasion of the private interest in the land.
A public nuisance is defined as an unreasonable interference with a right common to the public. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 712, citing Restatement of the Law 2d, Torts (1979) 87, Section 821B. Conduct does not amount to a public nuisance merely because it interferes or "bothers" a large number of people. At common law, there must be some interference with a public right which is common to all members of the general public. "In addition to common-law public nuisance, Ohio has adopted statutes and administrative regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right." Brown,87 Ohio App.3d at 712. In addition, a private individual may not recover damages in a cause of action for public nuisance unless there is a particular harm to the plaintiff that is of a different kind than that suffered by the public in general. Id. at 714, citing Restatement of the Law 2d, Torts (1979) 94, Section 821C(1).
Restatement of the Law 2d, Torts (1979) 100, Section 821D, defines private nuisance as a nontrespassory invasion of another's interest in the private use and enjoyment of his land. Section 822 of the Restatement further provides that in order for a party to recover for private nuisance, the party must show that the invasion of the party's interest is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities. Restatement of Torts 2d, supra, at 108.
The law in Ohio appears to treat absolute nuisance and nuisance per se as the same theory. The foundational element in these two characterizations of nuisance is that no matter how much care one exercises, such activities are inherently injurious and cannot be conducted without damaging a party's property rights. Brown,87 Ohio App.3d at 713. Absolute and nuisance per se are based upon either intentional conduct or abnormally dangerous conditions, and as such, a rule of absolute liability applies. Id., citing Jennings Buick, Inc. v.Cincinnati (1978), 56 Ohio St.2d 459, 465.
"As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another." Taylor v. Cincinnati (1944), 143 Ohio St. 426, paragraph three of the syllabus. Both private and public nuisances may be either absolute or qualified nuisances. Brown, 87 Ohio App.3d at 713.
We turn now to see if the trial court erred by entering summary judgment in favor of WTI and against appellants as to their claims for public and private nuisance.
 Common Law Public Nuisance
In the present case, WTI presented evidence that it was licensed to operate its hazardous waste incineration plant. Since WTI's waste incineration facility operates under sanction of law, based on that fact alone, it cannot be a common law public nuisance. Allen Freight Lines,Inc. v. Consol. Rail. Corp. (1992), 64 Ohio St.3d 274, 277, citing Stateex rel. Brown v. Rockside Reclamation, Inc. (1976), 47 Ohio St.2d 76, superceded by statute other grounds Atwater Twp. Trustees v. B.F.I.Willowcreek Landfill (1993), 67 Ohio St.3d 293, 296. As noted by the Fourth District Court of Appeals:
"This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort. This is especially true where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist."Brown, 87 Ohio App.3d at 713.
Therefore, WTI's mere existence or operation could not qualify it as a common law public nuisance.
Appellants contend that the Ohio Supreme Court's decision in AtwaterTwp. Trustees v. B.F.I. Willowcreek Landfill (1993) 67 Ohio St.3d 293,296, overruled the general rule in Rockside Reclamation, Inc. (1976),47 Ohio St.2d 76, that an act which has been authorized by law cannot qualify as public nuisance.
In Rockside Reclamation Inc., the court reviewed a case in which the attorney general brought a nuisance action against a landfill operator under the general criminal nuisance statute set forth under R.C. 3767.13. In reviewing the legislative scheme set forth under R.C. 3734, the court found that the subsequent legislative enactment of R.C. 3734 took precedent over the earlier general nuisance statute listed under R.C.3767.13. The language set forth in R.C. 3734.10 required that before the attorney general could prosecute a party for a violation of any of the statutory or administrative regulations listed under R.C. 3734, the attorney general had to receive a complaint from either the board of health or director of environmental protection. In this particular instance, the attorney general attempted to circumvent the notice requirement by enforcing the more general nuisance statute of R.C. 3767.13.
In Atwater Twp. Trustees, the court reviewed the trial court's determination that its decision in Rockside Reclamation Inc., preempted the enforcement of a local anti-nuisance resolution. The trial court had determined that the nuisance provisions set forth in R.C. 3734 preempted the local anti-nuisance resolution. The court disagreed. Specifically, the court noted that R.C. 3734 had been amended since its decision inRockside Reclamation Inc. to state that R.C. 3734 did not abridge any rights or remedies under common law or as provided by statute to suppress nuisances or abate pollution. Therefore the court determined that this subsequent legislative enactment had effectively overruled its decision in Rockside Reclamation Inc. and that R.C. 3734 did not preclude the enforcement of the local anti-nuisance statute.
However, the decision in Atwater Twp. Trustees did not overrule the general rule in Rockside Reclamation Inc. that conduct, which is fully authorized by statute or administrative regulation, is not actionable as a public nuisance. See, also, City of Mingo Junction (1935),130 Ohio St. 34, paragraph three of the syllabus, and Brown v. SciotoCty. Bd. of Cmmrs. (1993), 87 Ohio App.3d 704.
 Statutory Public Nuisance
Despite the fact that WTI could not qualify as a common law public nuisance based upon its mere existence and operation, as noted supra, Ohio has adopted statutes and regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right. Id. at 712. One such statute, Ohio Adm. Code3745-15-07(A) provides in pertinent part:
"Except as provided in paragraph (B) of this rule, the emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, odors, or any other substances or combinations of substances, in such manner or insuch amounts as to endanger the health, safety or welfare of the public,or cause unreasonable injury or damage to property, is hereby found anddeclared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance." (Emphasis added.)
By enacting this administrative regulation, Ohio declared that the proscribed conduct therein constituted an unreasonable interference with a public right. Therefore, any interference with this public right the public right to remain free from exposure to polluting substances that insuch a manner or amount endanger the health, safety, or welfare of thepublic, or which causes unreasonable injury to property is found to be a public nuisance.
WTI admitted in its motion for summary judgment that there had been three incidents of offsite migration of odors from the WTI facility. However, WTI also presented evidence in the form of the expert testimony of Lowenbach that odors and emissions from WTI posed no risk to human health. Defendants' Motion for Summary Judgment at Exhibit B. Therefore, it appears that WTI complied with its initial summary judgment burden by directing the court's attention to evidence showing an absence of a genuine issue of material fact as to the issue of statutory public nuisance.
Appellants thereafter bore the reciprocal burden of demonstrating the existence of a genuine issue of material fact as its claim of statutory public nuisance. In response to WTI's motion for summary judgment, appellants attached several documents to their brief in opposition to summary judgment. WTI thereafter filed a motion to strike attachments 1-6 of appellants' brief in opposition to summary judgment. In its summary judgment order, the trial court granted WTI's motion to strike in part, and struck attachment 3 from the record. Therefore, prior to discussing whether or not appellants met their reciprocal burden, the court need address whether it may consider the attachments to appellants' brief in opposition to summary judgment in determining whether or not appellants met their reciprocal burden of proof.
WTI's first cross-assignment of error states:
 "The trial court erred in denying Defendants' Motion to Strike Attachments to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment. (Opinion and Judgment Entry at p. 12)"
In its first assignment of error, WTI argues that the trial court erred in denying its motion to strike the attachments to appellants' brief in opposition to summary judgment. WTI contends that these documents are not within the specific type of evidence listed in Civ.R. 56(C), and that therefore these documents may not be considered on appeal in support of appellants' arguments that the trial court erred by granting summary judgment in favor of WTI. In addition, WTI argues that it did not waive any objection to the submission of these attachments for the purposes of summary judgments proceedings simply because it had not objected to the submission of these documents when appellants had submitted them in support of other motions.
In response to WTI's arguments, appellants argue that the trial court did not err by denying WTI's motion to strike all of the attachments to appellants' brief in opposition to summary judgment. First, appellants argue that WTI waived its objection to the submission of the attachments by failing to object to the submission of these documents when appellants attached these documents to other motions. Appellants further claim that several of the documents which WTI moved to strike were also self-authenticated or certified copies and therefore operated as valid evidence in support of their motion for summary judgment.
Civ.R. 56(C) governs the evidence which the trial court may consider in determining whether a party is entitled to summary judgment and states in pertinent part:
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no genuine issue as to any material fact * * *. No evidence orstipulation may be considered except as stated in this rule." (Emphasis added.)
As stated in the rule, Civ.R. 56(C) places strict limitations upon the type of documentary evidence that a party may use in support of or in opposition to summary judgment. Documents merely attached to a summary judgment motion, even though allegedly certified as official records, are not cognizable. Spier v. American Univ. of the Caribbean (1981),3 Ohio App.3d 28, 29. If a document does not fall within one of the categories of evidence listed in Civ.R. 56(C), it can only be introduced as proper evidentiary material when it is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). Biskupich v. WestbayManor Nursing Home (1986), 33 Ohio App.3d 220, 222. See, e.g., State exrel. Corrigan v. Seminatore (1981), 66 Ohio St.2d 459, 467 ("The requirement of Civ.R. 56[E] that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions."). Opposing affidavits must be made on personal knowledge, must set forth facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Civ.R. 56(E).
Appellants attached six exhibits to their motion in opposition to summary judgment. WTI asked the trial court to strike each of them. They were:
Exhibit 1 — Purported press releases from Von Roll/WTI
Exhibit 2 — Copy of a report from the United States General Accounting Office to certain members of Congress
Exhibit 3 — Affidavit of Alonzo Spencer with attached documents
Exhibit 4 — Copy of a monitoring report from United States Environmental Protection Agency
Exhibit 5 — Deed for property located in East Liverpool
Exhibit 6 — Deed for property located in East Liverpool
Exhibits 1 and 2 were offered by appellants in support of their argument that their claims were not barred by the statute of limitations. As indicated in our resolution of WTI's second cross-assignment of error, appellants' claims were not barred by the statute of limitations and there was other evidence independent of those exhibits, including deposition testimony, to adequately support that conclusion. Therefore, WTI's argument with regard to those two exhibits and the trial court's refusal to strike them is moot.
The trial court struck Exhibit 3 when making its decision to grant summary judgment in favor of WTI as it determined that this attachment was not in conformity with Civ.R. 56(C). Appellants do not assign that part of the trial court's decision as error and, therefore, does not need to be addressed any further.
Exhibit 4 is a copy of a monitoring report prepared by the Deputy Regional Administrator of the United States Environmental Protection Agency concerning WTI's operations. The report appears to set forth a historical list of violations of regulations identified by the agency and the corresponding enforcement action taken. Even if these violations are construed as evidence of negligence per se as argued by appellants, as will be discussed infra, appellants failed to establish proximate causation and damages. Therefore, WTI's argument with regard to this exhibit and the trial court's refusal to strike them is moot.
Exhibits 5 and 6 were offered by appellants simply to demonstrate certain plaintiffs' ownership of property and for the purpose of establishing their standing. Since appellants' claims fail for other reasons independent of their standing, WTI's argument with regard to those two exhibits and the trial court's refusal to strike them is moot.
Because WTI's arguments with regard to the trial court's refusal to strike Exhibits 1, 2, 4, 5, and 6 is moot, its first cross-assignment of error is also moot in its entirety.
Appellants also point to other evidence in the record, which they claim demonstrates a genuine issue of material fact as to whether or not WTI's conduct amounts to a statutory public nuisance. Appellants contend that they pointed to other expert testimony, which supports the conclusion that the burning of toxic waste at WTI endangers the health, safety, and welfare of the public. Appellants argue that the testimony of Drs. David Michael Osenoff, Herbert L. Needlemen, and Michael A. McCully, as well as various documents contained in their memorandum of law in support of the Motion of Plaintiffs-Counterclaim Defendants for Judgment on the Pleadings on Counterclaim Counts One through Four and for Summary Judgment on Count Five creates a genuine issue of material fact as to whether or not WTI's conduct amounted to a statutory public nuisance.
The foregoing evidence, which appellants contend creates a genuine issue of material fact as to WTI's negligence, does not fall within the type of evidence enumerated in Civ.R. 56(C) that a court may consider in deciding a motion for summary judgment. The expert testimony by Drs. David Michael Osenoff, Herbert L. Needlemen, and Michael A. McCully that appellants refer to took place in a separate and unrelated case. This type of testimony does not fall within the evidence listed in Civ.R. 56(C), and therefore, it may not be considered on appeal[6].
Finally, appellants argue that the testimony in the depositions of two of the plaintiffs, Pokladnik and Bardun[7], both of which appellants hold out to be experts in the field of chemistry and environmental engineering, creates a genuine issue of material fact as to whether or not WTI operated as a public statutory nuisance. Appellants argue that Pokladnik and Bardun testified that WTI was emitting chemicals which were very harmful to the health and safety of the community.
After reviewing the depositions of Pokladnik and Bardun, it appears that the trial court did not err by holding that appellant had failed to establish a statutory public nuisance as appellants produced no evidence, other than mere allegations, that any of the alleged pollutants or emissions endangered the health, safety, or welfare of the public. A review of the record shows that Pokladnik and Bardun had not undertaken any scientific analysis or studies in support of their allegations that WTI posed a serious health and safety risk to the community. In her deposition taken on January 6, 1999, Pokladnik was cross-examined by WTI's counsel as to the methodology and research that she had used in determining that WTI posed a health and safety risk to the community:
 "Q. Okay. So again in forming your opinion you personally did not conduct any independent research or investigation or examination of — WTI data other than the permit; is that correct?
"* * *
"A. Physical research, no, no.
"* * *
 "Q. Okay. But in forming your opinion you — you did not review any of the emissions data from the WTI facility; is that correct?
"A. No.
 "Q. In forming your opinion, did you undertake any type of investigation or studies into the potential impact of — impact of other air sources on the ambient air in the Ohio River Valley?
 "A. No. I just looked basically at the WTI permit and the information on — on incineration and the process." Deposition of Randi Pokladnik January 6, 1999 at pp. 41-42.
A review of Bardun's depositions also shows a similar problem with her testimony and her conclusion that WTI's operations endangers the health, safety, and welfare of the public.
 "Q. Okay. So are — are you saying that the mere presence of WTI be — and being engaged in the incineration of hazardous waste causes the facility to make it dangerous to live within 60 miles of the facility?
"A. Yes.
"* * *
 "Q. The basis for that opinion is again based upon your knowledge generated from reading books, textbooks and articles; is that correct?
"A. Yes.
 "Q. It's not based upon any knowledge that you've gathered from independent studies that you've personally undertaken?
 "A. No. * * *" Deposition of Robin Bardun January 6, 1999 at pp. 24-26.
The foregoing testimony shows that appellants failed to present a genuine issue of material fact as to whether or not WTI's actions amounted to a statutory public nuisance. Permitting appellants to proceed beyond summary judgment would, in the instant matter, be equivalent to permitting appellants to essentially proceed on mere allegations. Despite the contentious and ongoing nature of this dispute, appellants failed to present any substantive and scientific evidence as to the contents of WTI's emissions or as to the danger or threat these emissions pose to the welfare and safety of the public.
As reasonable minds could come to only one conclusion that appellants failed to present sufficient evidence to establish a genuine issue of material fact as to their claim for statutory public nuisance, the trial court did not err in granting summary judgment in favor of WTI as to the claim for statutory public nuisance.
Appellants' seventh assignment of error is without merit.
 Private Nuisance/Negligence
As noted supra, a private nuisance is defined as a nontrespassory invasion of another's interest in the private use and enjoyment of land.Brown, 87 Ohio App.3d at 712. Private nuisance may be further divided and classified as either an absolute nuisance or a qualified nuisance. Id. at 715. However, a facility duly licensed and regulated under state law cannot be subject to absolute nuisance. Id. at 800. Therefore, the only basis for which appellants may recover under a nuisance theory is that of qualified private nuisance. "A civil action based upon the maintenance of a qualified private nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm ultimately resulting in injury." Id. at 715, citing Allen Freight Lines, Inc. v. Consol. Rail Corp. (1992),64 Ohio St.3d 274, 275. In such a case, negligence must be proven to warrant recovery. Id. at 715.
The essential elements of negligence are a duty, breach of duty, and injury resulting proximately therefrom. Strother v. Hutchinson (1981),67 Ohio St.2d 282. The amount of care required of a person to establish whether he has discharged his duty to another is referred to as the degree of care or the standard of conduct which an ordinarily careful and prudent person would exercise or observe under the same or similar circumstances. Id. For liability to attach, a defendant's failure to conform to this standard of care must be the actual and proximate cause
of plaintiff's injuries. Id. at 286-87.
In applying the law to the present facts, a thorough review of the record indicates that the trial court did not err in granting summary judgment as to appellants' claim for qualified private nuisance. First, WTI met its initial burden of demonstrating an absence of a genuine issue of material fact as to its negligence. As noted supra, WTI introduced affidavits by Sigg and Lowenbach in which these two experts provided expert testimony that the alleged airborne pollutants and odors emanating from WTI were minimal or nonexistent. Defendants' Motion for Summary Judgment at Exhibits A and B. In summation, the evidence submitted by WTI showed that it had not breached its duty of reasonable care.
Thereafter, the burden shifted to appellants to show a genuine issue of material fact as to whether or not WTI breached its duty of care. After thoroughly reviewing the record, it appears that appellants failed in this reciprocal burden as well. Essentially, the only evidence presented by appellants consisted of statements by the plaintiffs-appellants that certain dust and odors around their homes originated from WTI[8]. However as previously noted, these parties testified in their depositions that they had no proof that the dust or odors originated in WTI's facility. See Footnote 5.
Even if appellants had established a genuine issue of material fact as to breach of duty, as the trial court noted, appellants have presented virtually no evidence of actual or proximate causation. Appellants argue that WTI's alleged negligence caused appellants to suffer a loss of the enjoyment of the use of their property as well as a diminution in the value of their property. After thoroughly reviewing the entire record, it appears that appellants presented no admissible evidence that the odors or dust which appellants complained caused the loss of the enjoyment of their property actually emanated from the WTI facility. In addition, appellants offered no proof that WTI's alleged violations of R.C. 3734 (as discussed in footnote 8) caused the diminution in the value of their land. The only so called proof of actual and proximate causation lies in appellants' briefs or pleadings. To permit appellants to proceed beyond summary judgment would be tantamount to permitting them to proceed essentially on mere allegations. Once again, we note that despite the contentious and long-term nature of this litigation, appellants have presented no scientific or admissible evidence under Civ.R. 56(C). Therefore, when the evidence is viewed in a light most favorable to appellants, we find that the trial court did not err in granting summary judgment in favor of WTI as to appellants' claims for qualified private nuisance and negligence.
For the foregoing reasons, appellants' eighth and ninth assignments of error are without merit.
In summation, appellants' nine assignments of error and WTI's second cross-assignment of error are without merit. WTI's first cross-assignment of error is moot. For the aforementioned reasons, the judgment of the trial court is hereby affirmed.
As for the motions that remain pending, appellants' motion for sanctions is overruled and WTI's motion to strike is sustained.
Vukovich, J., concurs
Waite, J., concurs
[1] Appellants' complaint also listed Waste Technologies Inc., Von Roll (Ohio), Inc., Von Roll, Inc., Von Roll America, Inc., Energy Technology Company, d.b.a. Enertech Development Inc., Environmental Elements (Ohio), Inc., and Von Roll AG as defendants in the instant action. In a judgment entry filed August 28, 1997, the trial judge dismissed defendants Von Roll AG, Von Roll America, Inc., and Von Roll, Inc. from the lawsuit. For the sake of clarity, the remaining defendants will be hereinafter collectively referred to as "WTI".
[2] A motion to grant class certification had not been ruled upon prior to the trial court issuing its summary judgment order.
[3] In Swearingen v. Waste Technology Industries (Sept. 21, 1999), 7th Dist. Nos. 98 CO 26 and 98 CO 35, this court addressed collateral matters to the instant case.
[4] For example, see Deposition of Homer Wright at 63-64, Deposition of George Waight at 62, Deposition of Randi Pokladnik Dec. 10, 1997 at 50, Deposition of David Hager at 93, Deposition of Carolyn Hager at 57-58, Deposition of Donald Danver at 67-70, Deposition of Grace Bosco at 84, Deposition of Phylis Marchbanks at 70, and Deposition of Robin Bardun Dec. 9, 1997 at 58-59.
In addition, there was also testimony by at least one appellant, Dorothy Waight, that white powder on the grass could have come from another plant, China Hall, which produces pottery items. Also as noted in Sigg's affidavit, the area in which WTI is located is zoned for heavy industry and many other industrial plants also occupy this area. For example Wallover Oil Co, CSX Railroad Tracks, Kentac (a plastic processing plant), Ferro Corporation, (a porcelain manufacture), D.W. Dickey (a concrete manufacturer), and Hays Oil (an oil distributor), all occupy this industrial zoned area. Defendants' Motion for Summary Judgment at Exhibit A.
[5] WTI argues that appellants may not bring a claim for statutory nuisance under Ohio Adm. Code 3745-15-07. WTI argues that this section is only directly enforceable by the attorney general or the director of environmental protection. We note that R.C. 3704.06 permits only the attorney general and director of environmental protection to bring charges for violations of the administrative regulations adopted pursuant to R.C. 3704.03. However, we note that we are not permitting appellants directly to enforce Ohio Adm. Code 3745-15-07. Rather, the legislature has determined that violations of the standard of care and conduct listed therein constitute an unreasonable interference with a public right for which a party may bring a claim for a public nuisance. Brown v. SciotoBd. of Commrs. (1993), 87 Ohio App.3d 704, 712.
[6] Appellants also direct the court's attention to the testimony of Dr. Paul Connett which they contend shows that WTI emits pollutants that endanger the health and safety of the public. Although appellants contend that a copy of Dr. Connett's expert report was attached to their Final Disclosure of Lay and Expert Witnesses, it appears that this document was not filed with the trial court. In a notice entry dated March 13, 1998, appellants issued a notice to the court, which provided, "The Plaintiffs have this date forwarded to the Defendants, their `Final Disclosure of Lay and Expert Witnesses' and have also attached the written expert reports." Thus, although appellants forwarded these reports to WTI, it appears that these documents were never properly placed in the record. Even if these documents had been properly placed in the record, it appears from appellants' accounts that these documents would not qualify as admissible summary judgment evidence as set forth in Civ.R. 56(C).
[7] Appellants also point to the testimony in the attached expert reports of Pokladnik and Bardun, which appellants attached to their Final Disclosure of Lay and Expert Witnesses. As previously noted, appellants did not file the March 13, 1998 Final Disclosure of Lay and Expert Witnesses of which Pokladnik's report was attached to. Therefore, we may not consider it on appeal. In addition, Bardun's report, which was attached to appellants' April 24, 1998, Final Disclosure of Lay and Expert Witnesses, does not fall within the scope of enumerated material that a trial court may consider in determining summary judgment. As such, it too will not be considered.
[8] Appellants also direct the court's attention to attachment 3 in their brief in opposition to summary judgment for proposition that they submitted evidence of various violations of R.C. 3734 which constitutes evidence of negligence per se. Appellants contend that these documents satisfy their reciprocal burden. However, as noted by WTI, the trial court struck attachment 3 from the record as it did not conform with the evidentiary standards set forth in Civ.R. 56(C). Appellants have not appealed the striking of this document, therefore, the issue need not be addressed further on appeal and attachment 3 will not be considered in determining whether appellants met their reciprocal burden of proof.